**Stanley DITTY, Appellant,**

v.

**Larry HAMPTON, Appellee.**

Court of Appeals of Kentucky.

Oct. 20, 1972.

As Modified on Denial of Rehearing
March 16, 1973.

James C. Brock, Harlan, for appellant.

Eugene Goss, Goss, Forester & Emerson, Harlan, for appellee.

David C. Short, David E. Murrell, Lexington, for Ky. Legal Aid and Defender Assn., amicus curiae.

Leslie Whitmer, Ky. State Bar Assn., Frankfort, for Ky. State Bar Assn., amicus curiae.

Ed W. Hancock, Atty. Gen., Frankfort, for the Commonwealth.

CULLEN, Commissioner.

The Harlan Circuit Court, being of the opinion that the police court of the City of Harlan (a fourth-class city) is unconstitutionally constituted to try criminal proceedings, entered judgment enjoining the judge of that court from taking any steps in the prosecution of one Larry Hampton on two charges of violations of the motor-vehicle traffic laws, punishable by fine alone, and a charge of disorderly conduct, punishable both by fine and by imprisonment up to six months. The judgment further enjoined the police judge from presiding over any criminal trial or exercising any jurisdiction in any criminal proceeding, then pending or thereafter commenced. The latter injunctive provision was suspended, however, pending an appeal. We have before us the appeal of the police judge from the judgment.

The police judge of Harlan is not an attorney or a person with any training in the law, and the governing statute, KRS 26.-190, does not require that the judge of the police court of a fourth-class city be an attorney or be trained in the law. However, the judge of the police court of a first-class city is required by statute, KRS 26.140, to be a lawyer of eight years' practice, and the judge of the police court of a second-class city is required by KRS 26.150 to be a lawyer of four years' practice.

The Harlan Circuit Court was of the opinion that *due process* requires that the presiding judge in the trial of any criminal prosecution, whether for a felony or a misdemeanor and whether punishable by imprisonment or only by fine, be a person "learned and trained in the law." The circuit court further was of the opinion that there was a denial of *equal protection of the law* in the statutory system requiring police judges in cities of the first two classes to be lawyers but permitting nonlawyers to be police judges in cities of the other four classes.

The appellant maintains that the circuit court is wrong on both of the grounds of unconstitutionality. The appellee Hampton of course defends the judgment in all aspects. Briefs supporting the judgment have been filed also by the Kentucky Legal Aid and Defender Association and by the Kentucky State Bar Association.

In defending the judgment the appellee maintains that the judgment did not require that the judge be an *attorney*, but only that he be a person with learning and training in the law. It is questionable whether that interpretation of the judgment is correct, since the circuit court expressed reliance on the holding in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed. 2d 530, that a defendant threatened with incarceration is entitled to be represented by an *attorney*. Regardless of what the judgment meant in that regard, we cannot conceive of any workable classification of persons "learned and trained in the law" as distinguished from licensed attorneys. We point to the fact that in those states whose constitutions require that judges be persons "learned in the law," the courts uniformly have held that judges must be *attorneys*. See Opinion of the Justices, 279

Ala. 38, 181 So.2d 105; State v. Schmahl, 125 Minn. 533, 147 N.W. 425; Jamieson v. Wiggin, 12 S.D. 16, 80 N.W. 137. So we consider the question in issue, as relates to due process, to be whether a police court judge must be an attorney.

We shall consider first the question of due process.

As did the Supreme Court in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, we consider due process as embodying those "fundamental principles of liberty and justice which lie at the base of our civil and political institutions," and one test we apply to determine whether due process has been accorded in a given instance is to ascertain what were "the settled usages and modes of proceeding under the common and statutory law of England before the Declaration of Independence * * * having been followed in this country after it became a nation."

At the same time, we give recognition to the proposition, stated in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, that:

"* * * basic rights do not become petrified as of any one time, even though, as a matter of human experience, some may not too rhetorically be called eternal verities. It is of the very nature of a free society to advance in its standards of what is deemed reasonable and right. Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits of the essentials of fundamental rights."

The substance of the circuit court's opinion in the instant case was that if, as held in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, due process requires that the accused in a criminal case be represented by legal counsel when imprisonment is a potential punishment, it necessarily follows that due process requires that the court in such a case be presided over by a lawyer. We believe it does not so follow.

The United States Constitution, in the Sixth Amendment, always has guaranteed the accused in a criminal prosecution in the federal courts the right to have counsel. Our Kentucky Constitutions, beginning with the first one in 1792, always have guaranteed the accused in a criminal prosecution in a Kentucky court the right to have counsel. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, in 1962, the right to have counsel in felony prosecutions in all state courts was recognized. Thereafter, at least as soon as Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, in 1968, it became accepted that the right to counsel existed in prosecutions for serious misdemeanors. In 1962, in White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, it was held that an accused is entitled to counsel at an examining trial. And in 1966, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, held that a juvenile was entitled to counsel in proceedings in juvenile court. Never, on the occasion of any of those decisions, was it even suggested that the right to counsel carries with it the right to be tried by a lawyer judge. Obviously, the Supreme Court was aware, when it decided White v. Maryland, that examining trials frequently are conducted by nonlawyer magistrates, and was aware, when it decided Gault, that juvenile court judges in many areas are not lawyers. Yet no question was recognized as existing with respect to the composition of the examining courts and juvenile courts.

All this is to show that there never has been any thought that a right to be tried by a lawyer judge grows out of the right to be defended by a lawyer.

Due process, as regards the *tribunal* hearing a case, usually has been considered to require only that the tribunal be *fair and impartial*. In re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. The

function of the court is not to defend the accused, or to represent him, but to decide fairly and impartially. An accused needs counsel to defend him, as pointed out in Gideon v. Wainwright, because the government employs lawyers to prosecute him—because our system of criminal justice is an adversary system. But the judge is not one of the accused's adversaries, and is not there either to defend or to prosecute him. So the fact that the accused needs a lawyer to defend him does not mean that he needs to be tried before a lawyer judge.

Long before Gideon v. Wainwright it was recognized that both in civil and in criminal cases a party who could and did *employ* counsel was entitled as a matter of due process to be heard by that counsel. Yet it never was suggested that there was a concomitant right to a lawyer judge. To the contrary, in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484, the Supreme Court held that in a parole-revocation proceeding, due process required only a "neutral and detached" hearing body, members of which need not be judicial officers or lawyers.

 It is argued, however, that the right to a legally trained judge was embedded in the common law by the provision of the Magna Carta that "We will appoint as justices, constables, sheriffs, or bailiffs only such as know the law of the realm and mean to observe it well." Whatever the intent of that provision may have been, the fact is that it did not result, in England, in the courts being staffed with lawyer judges. In fact, in an article in the New York Times of August 6, 1972, it was reported that 98 percent of all criminal cases in the British system are handled by the magistrates, most of whom are laymen with no legal background, and that there are 20,000 laymen magistrates in England.

We note, as was pointed out in Powell v. Alabama, that originally, in England, it was only parties in civil cases and persons accused of misdemeanors who were entitled to the full assistance of counsel, while persons charged with felonies were denied the aid of counsel. Thus, it is difficult to find merit in the argument that the completely unrecognized "right" to be tried by a lawyer judge suddenly, overnight, became *fundamental* when in Argersinger v. Hamlin a right in this country to counsel in misdemeanor cases finally was given full expression.

 The inescapable conclusion is that traditional concepts of fundamental fairness do not require that an accused be tried by a lawyer judge, and that the staffing of police courts by laymen judges does not offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." See Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674. Also, we think it is clear, accepting due process as a living principle, that advancing standards or changing conditions have not yet made the lawyer judge a condition of fundamental fairness.

We have reached the expressed conclusion without reference to the question of whether nonlawyer judges at the lower level in our two-tier system of handling misdemeanor cases could stand even in the face of a general requirement that courts be presided over by lawyers. The Supreme Court, in Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, made these significant comments:

"* * * We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available. Proceedings in the inferior courts are simple and speedy, and, if the results in Colten's case are any evidence, the penalty is not characteristically severe. Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty

without a trial and promptly secure a de novo trial in a court of general criminal jurisdiction. He cannot, and will not, face the realistic threat of a prison sentence in the inferior court without having the help of counsel, whose advice will also be available in determining whether to seek a new trial, with the slate wiped clean, or to accept the penalty imposed by the inferior court. * * * In reality his choices are to accept the decision of the judge and the sentence imposed in the inferior court *or to reject what in effect is no more than an offer in settlement of his case* and seek the judgment of judge or jury in the superior court, with sentence to be determined by the full record made in that court. * * *" (our emphasis.)

We believe there are strong considerations that would support a holding that even if due process required lawyer judges for courts of general criminal jurisdiction, the requirement would not apply to the inferior courts in the Kentucky two-tier system. Such a holding would not conflict with Roberts v. Noel, Ky., 296 S.W.2d 745, because there the system of paying judges only on convictions struck at the very heart of the due-process requirement of fairness and impartiality, which applies at every level of a judicial system.

We come now to the question of denial of equal protection of the law, held by the circuit court to exist because of the fact that the statutes require that police court judges in cities of the first two classes be lawyers but do not so require as to other classes of cities. We reserve decision on the matter of whether if this court should agree that there is a denial of equal protection, any appropriate remedy could be granted in this action, but we note the problem that exists in that regard. It is doubtful that this court simply could establish by order the qualification for all police judges that they be lawyers. On the other hand, no one asks in this action (and probably no one is entitled to ask) that the

court undertake to eliminate the discrimination by nullifying the statutory direction that police judges in cities of the first two classes be lawyers. This leaves as the only possible remedy an order putting the police court system out of business pending action by the legislature to remove the discrimination. Rather than delve into this problem we have chosen to face directly the question of whether there is an invidious discrimination in the situation at issue, and it is our conclusion that there is not.

Since the question presented is only one of *benefits* allegedly conferred on some citizens and withheld from others, and not a question of a denial of *rights* of due-process stature, we think the controlling consideration is whether the classification made by the statutes has a sufficiently reasonable basis, in the light of the purpose of the statutes, to be found nondiscriminatory in a constitutional sense. See Miller v. Nunnelley, Ky., 468 S.W.2d 298; cert. denied, 404 U.S. 941, 92 S.Ct. 286, 30 L.Ed. 2d 255; 16 Am.Jur.2d, Constitutional Law, sec. 494, p. 859.

We can conceive of the following possible reasonable bases for the classification here in question:

1. The greater volume of court business in the larger cities requires that judges be attorneys to enable the courts to operate efficiently and expeditiously (not necessarily with more fairness and impartiality).

2. Lawyers with whom to staff the courts are more available in the larger cities.

3. The larger cities have greater financial resources with which to provide better qualified personnel and better facilities for the courts. Cf. Metcalf v. Howard, 304 Ky. 498, 201 S.W.2d 197.

That population and area factors may justify classifications within a court system

has long been recognized. See Missouri v. Lewis, 101 U.S. 22, 25 L.Ed. 989. Our court has held valid the statutes making different provisions, among the police courts of different classes of cities, as to the right to a jury trial. See KRS 26.400; Houk v. Starck, 251 Ky. 276, 64 S.W.2d 565; City of Mt. Sterling v. Holly, 108 Ky. 621, 57 S.W. 491; see also KRS 25.014.

The reasonableness of the bases for the classification in issue must be measured in the light of the possible detriment that members of the public may suffer from the classification. There has been no showing in this case that nonlawyer police judges, proportionately, convict more defendants, impose higher sentences, or are reversed more on appeal, than lawyer judges. There is no basis for any finding that they are less fair and impartial in cases in which the defendant, as he is entitled, is represented by counsel, or that their ignorance of the law harms the accused more than the government. There is no support for the assertion that the nonlawyer judge, generally, will accept the prosecutor's version of the law rather than that of defense counsel.

We conclude that the bases for the classification reasonably justify the classification in the balance of the bases against possible detriment factors.

Forceful arguments have been made that the inferior courts would better perform the judicial function with lawyer judges, but we are not persuaded that due process requires it or that the failure of the statutes to require it in the less populous classes of cities offends the constitutional guaranty of equal protection of the law. And we can envision serious problems that could arise in an undertaking to impose such a requirement. For example, if the county judge and justices of the peace were required to be lawyers, would that not mean that the fiscal court (the county administrative body), which is composed of the county judge and the justices of the peace, could have only lawyers as members?

The judgment is reversed, with directions to enter judgment in conformity with this opinion.

All concur.