## NORTH *v.* RUSSELL ET AL.

No. 74–1409.   Argued December 9, 1975—Decided June 28, 1976

BURGER, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., concurred in the result. STEWART, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post,* p. 339. STEVENS, J., took no part in the consideration or decision of the case.

*Charles E. Goss* argued the cause and filed briefs for appellant.

*Robert L. Chenoweth,* Assistant Attorney General of

Kentucky, argued the cause for appellees. With him on the briefs was *Ed W. Hancock*, Attorney General.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

The question presented in this case is whether an accused, subject to possible imprisonment, is denied due process when tried before a nonlawyer police court judge with a later trial *de novo* available under a State's two-tier court system; and whether a State denies equal protection by providing law-trained judges for some police courts and lay judges for others, depending upon the State Constitution's classification of cities according to population.

(1)

Appellant Lonnie North was arrested in Lynch, Ky., on July 10, 1974, and charged with driving while intoxicated in violation of Ky. Rev. Stat. Ann. § 189.520 (2) (1971). If a first offense, a penalty of a fine of from $100 to $500 is provided; if a subsequent offense, the same fine, and imprisonment for not more than six months.[1] Ky. Rev. Stat. Ann. § 189.990 (10)(a) (1971).

---

*Briefs of *amici curiae* urging reversal were filed by *Allan Ashman* for the American Judicature Society; by *Rene H. Reixach, Jr.*, for the Petitioners and Classes of Petitioners in *Wyse* v. *Hopkins* and in *Sanchez* v. *Tonkin;* and by *Laughlin McDonald, Ray McClain, Neil Bradley*, and *Melvin L. Wulf* for the American Civil Liberties Union Foundation, Inc.; by *Leslie G. Whitmer* for the Kentucky Bar Assn.; by *Marshall· J. Hartman, Joseph T. Garlovsky*, and *James F. Flug* for the National Legal Aid and Defender Assn.; and by *Jimi Mitsunaga* for the Salt Lake Legal Defenders Assn.

*Eugene W. Salisbury, Duncan S. MacAffer*, and *Lawrence A. Schulz* filed a brief for the New York State Association of Magistrates as *amicus curiae* urging affirmance.

[1] The offense now carries the same monetary fine schedule, but a second offense now requires imprisonment for not less than three

Appellant's trial was scheduled for July 18, 1974, at 7 p. m., before the Lynch City Police Court. Appellee C. B. Russell, who is not a lawyer, was the presiding judge. Appellant's request for a jury was denied although under Kentucky law he was entitled to a jury trial. Ky. Const. § 11; Ky. Rev. Stat. Ann. §§ 25.014, 26.400 (1971). Appellant pleaded not guilty. Appellant was found guilty and sentenced to 30 days in jail, a fine of $150, and revocation of his driver's license.

Section 156 of the Kentucky Constitution requires cities to be classified according to population size. There are six classes of cities: fifth-class cities have a population of between 1,000 and 3,000; sixth-class cities have a population of less than 1,000. Lynch is a fifth-class city. Ky. Rev. Stat. Ann. § 81.010 (5) (1971). A police judge in fifth- and sixth-class cities must by statute be a voter and resident of the city for at least one year and be bonded, Ky. Rev. Stat. Ann. § 26.200 (1971); the police judge in such cities need not be a lawyer. Police judges in first-class cities, which have populations of over 100,000, must have the same qualifications as a circuit judge, who must be at least 35 years of age, a citizen of Kentucky, a two-year resident of the district, and a practicing attorney for eight years.[2] Ky. Const. § 130; Ky. Rev. Stat. Ann. § 26.140 (1971). Police court judges have terms of four years.

---

days and not more than six months; any subsequent offense requires imprisonment for not less than 30 days and not more than 12 months. Ky. Rev. Stat. Ann. § 189.990 (9) (a) (Supp. 1974).

[2] A second-class city (population 20,000–100,000) police judge must be at least 25, a resident of the city for four years, and an attorney at law. Ky. Rev. Stat. Ann. § 26.150 (Supp. 1974). A third-class city (population 8,000-20,000) and a fourth-class city (population 3,000–8,000) police judge must be at least 24 and a city resident. Ky. Rev. Stat. Ann. § 26.190 (1971).

In fourth-, fifth-, or sixth-class cities police judges may be either appointed or elected.[3]  Ky. Const. § 160.

Police courts have jurisdiction, concurrent with circuit courts, of penal and misdemeanor cases punishable by a fine of not more than $500 and/or imprisonment of not more than 12 months.  Ky. Rev. Stat. Ann. § 26.010 (1971).  Kentucky has a two-tier misdemeanor court system.  An appeal of right is provided from the decision of a police judge to the circuit court where all judges are lawyers, and in that court a jury trial *de novo* may be had.  Ky. Rev. Stat. Ann. § 23.032 (1971); Ky. Rule Crim. Proc. 12.06.

Appellant did not appeal to the Kentucky circuit court for a trial *de novo* to which he was entitled.  After being sentenced by appellee judge, appellant challenged the statutory scheme described above by a writ of habeas corpus in the Harlan County Circuit Court, where he was

---

[3] The General Assembly of the Commonwealth of Kentucky at its 1974 session, by Senate Bill 183, enacted an Act proposing an amendment to the Kentucky Constitution relating to the judicial branch of government.  On November 4, 1975, the Kentucky voters ratified the judicial amendment to the Kentucky Constitution, effective January 1, 1976.  It provides, in part, that by January 1, 1978, all the county, quarterly, justice of the peace, and police courts will be combined into one district court in each of the 120 counties.  These counties are to be allocated among 55 districts and each district is to elect at least one district judge who must be an attorney licensed in Kentucky.  A district judge in multicounty districts must appoint a trial commissioner for each county in which no district judge resides.  The commissioner must be an attorney if one is qualified and available.  The commissioner will have the power to perform such duties of the district court as may be prescribed by the Kentucky Supreme Court.

The case is not mooted by this judicial amendment since the police courts will continue to function as challenged until January 1, 1978, and since the new amendment still permits nonlawyer judges to sit.  These judges may have power to impose prison sentences if the Kentucky Supreme Court so provides.

represented by an attorney. Appellant contended that his federal due process and equal protection rights had been abridged because he had been tried and convicted in a court presided over by a judge without legal training and thus without legal competence. The State Circuit Court issued the writ, granted bail, and held an evidentiary hearing.

The Circuit Court noted that appellant was not challenging the adequacy of the proceedings before appellee Russell, and hence rested on the appellant's pleadings, which the court found were purposefully limited to the issue whether appellant could be tried before a judge who was not legally trained when persons similarly situated but residing in larger cities would be tried by a judge trained in the law. The Circuit Court denied relief on the basis of the Kentucky Court of Appeals holding in *Ditty* v. *Hampton,* 490 S. W. 2d 772 (1972), appeal dismissed, 414 U. S. 885 (1973). The Kentucky Court of Appeals in turn affirmed the denial of relief on the basis of *Ditty* v. *Hampton, supra,* noting that appellant could apply for bail in the event of an appeal from the Lynch Police Court judgment. 516 S. W. 2d 103 (1974).

When this case first came here on appeal we vacated the judgment and remanded it "for further consideration in light of the position presently asserted by the Commonwealth." 419 U. S. 1085 (1974). The Attorney General of Kentucky in his motion to dismiss or affirm had requested that this Court remand the case to the Kentucky Court of Appeals for consideration of violations of state law based on the suggestion that appellee judge had "mistakenly imposed a sentence of imprisonment upon appellant for a first offense of driving while intoxicated, whereas imprisonment is not an authorized punishment for first offenders . . . ." The

Kentucky Attorney General conceded that the writ of habeas corpus should have been granted and requested an opportunity to correct the error.

On remand, however, the Kentucky Court of Appeals declined to decide the case on the state grounds presented by the Attorney General, noting that the federal constitutional issue "was and is the only issue before us." That court noted that appellant sought only to "test the constitutional status of lay judges in criminal cases." No. 74–723 (Mar. 21, 1975).

On the second appeal to this Court we noted probable jurisdiction. 422 U. S. 1040 (1975).

(2)

Appellant's first claim is that when confinement is a possible penalty, a law-trained judge is required by the Due Process Clause of the Fourteenth Amendment whether or not a trial *de novo* before a lawyer-judge is available.[4]

---

[4] Article III of the United States Constitution, of course, unlike provisions of some state constitutions, see, *e. g.*, N. Y. Const., Art. 6, § 20 (a); S. D. Const., Art. 5, §§ 10, 25, is silent as to any requirement that judges of the United States' courts, including Justices of the Supreme Court, be lawyers or "learned in the law." We note that in excess of 95% of all criminal cases in England are tried before lay judicial officers. See D. Karlen, Judicial Administration: The American Experience 32 (1970); H. Abraham, The Judicial Process 246–247, and n. 4 (2d ed. 1968). We also note that many of the States in the United States which utilize nonlawyer judges provide mandatory or voluntary training programs, see, *e. g.*, Iowa Code Ann. § 602.50 (6) (1975); La. Rev. Stat. Ann. § 49:251.1 (Supp. 1976); Miss. Code Ann. §§ 7–5–59, 9–11–3 (1972); Mont. Rev. Codes Ann. § 93–401 (Supp. 1975); Nev. Rev. Stat. § 5.026 (1973); N. Y. Uniform Justice Court Act § 105 (Supp. 1975–1976); N. C. Sess. Laws, c. 956, § 11 (1975); N. D. Cent. Code § 27–18–08 (Interim Supp. 1975); Pa. Stat. Ann., Tit. 42, § 1214 (Supp. 1976–1977); Utah Code Ann. § 78–5–27 (Supp. 1975); and training

It must be recognized that there is a wide gap between the functions of a judge of a court of general jurisdiction, dealing with complex litigation, and the functions of a local police court judge trying a typical "drunk" driver case or other traffic violations. However, once it appears that confinement is an available penalty, the process commands scrutiny. See *Argersinger* v. *Hamlin*, 407 U. S. 25 (1972).

Appellant argues that the right to counsel articulated in *Argersinger* v. *Hamlin, supra,* and *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), is meaningless without a lawyer-judge to understand the arguments of counsel. Appellant also argues that the increased complexity of substantive and procedural criminal law requires that all judges now be lawyers in order to be able to rule correctly on the intricate issues lurking even in some simple misdemeanor cases. In the context of the Kentucky procedures, however, it is unnecessary to reach the question whether a defendant could be convicted and imprisoned after a proceeding in which the only trial afforded is conducted by a lay judge. In all instances, a defendant in Kentucky facing a criminal sentence is afforded an opportunity to be tried *de novo* in a court presided over by a lawyer-judge since an appeal automatically vacates the conviction in police court. Ky. Rev. Stat. Ann. § 23.032 (1971); Ky. Rule Crim. Proc.

---

manuals, see, *e. g.,* G. Brownlee, The Montana Justice of the Peace and Police Judge (1970). The brief of *amicus curiae* New York State Association of Magistrates informs us that, of the States that have nonlawyer judges, Delaware, Florida, Idaho, Iowa, Mississippi, Montana, New Mexico, New York, North Carolina, North Dakota, Pennsylvania, Texas, Utah, Washington, West Virginia, and Wyoming have mandatory training programs, and Alaska, Georgia, Kansas, Louisiana, Missouri, Nevada, New Hamsphire, Oregon, South Carolina, Tennessee, Vermont, and Wisconsin have voluntary training programs.

12.06. The trial *de novo* is available after either a trial or a plea of guilty in the police court; a defendant is entitled to bail while awaiting the trial *de novo*. 516 S. W. 2d 103 (1974).

It is obvious that many defendants charged with a traffic violation or other misdemeanor may be uncounseled when they appear before the police court. They may be unaware of their right to a *de novo* trial after a judgment is entered since the decision is likely to be prompt. We assume that police court judges recognize their obligation under *Argersinger* v. *Hamlin, supra,* to inform defendants of their right to a lawyer if a sentence of confinement is to be imposed. The appellee judge testified that informing defendants of a right to counsel was "the standard procedure." App. 32. We also assume that police court judges in Kentucky recognize their obligation to inform all convicted defendants, including those who waived counsel or for whom imprisonment was not imposed, of their unconditional right to a trial *de novo* and of the necessity that an "appeal" be filed within 30 days in order to implement that right. Ky. Rule Crim. Proc. 12.04.

In *Colten* v. *Kentucky,* 407 U. S. 104 (1972), we considered Kentucky's two-tier system there challenged on other grounds. We noted:

> "The right to a new trial is absolute. A defendant need not allege error in the inferior court proceeding. If he seeks a new trial, the Kentucky statutory scheme contemplates that the slate be wiped clean. Ky. Rule Crim. Proc. 12.06. Prosecution and defense begin anew. . . . The case is to be regarded exactly as if it had been brought there in the first instance." *Id.,* at 113.

We went on to note that the justifications urged by

States for continuing such tribunals[5] are the "increasing burdens on state judiciaries" and the "interest of both the defendant and the State, to provide speedier and less costly adjudications" than those provided in courts "where the full range of constitutional guarantees is available . . . ." *Id.*, at 114. Moreover, state policy takes into account that it is a convenience to those charged to be tried in or near their own community, rather than travel to a distant court where a law-trained judge is provided, and to have the option, as here, of a trial after regular business hours. We took note of these practical considerations in *Colten:*

> "We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available. Proceedings in the inferior courts are simple and speedy, and, if the results in Colten's case are any evidence, the penalty is not characteristically severe. Such proceedings offer a defendant the opportunity to learn about the prosecution's case and, if he chooses, he need not reveal his own. He may also plead guilty without a trial and promptly secure a *de novo* trial in a court of general criminal jurisdiction." *Id.*, at 118–119.

---

[5] We observed in *Colten v. Kentucky* that in the first-tier tribunals, "[s]ome [States], including Kentucky, do not record proceedings and the judges may not be trained for their positions either by experience or schooling." 407 U.S., at 114. We took note of the Kentucky Court of Appeals' comment that " 'the inferior courts are not designed or equipped to conduct error-free trials, or to insure full recognition of constitutional freedoms. They are courts of convenience, to provide speedy and inexpensive means of disposition of charges of minor offenses.' *Colten* v. *Commonwealth,* 467 S. W. 2d, at 379." *Id.*, at 117.

Under *Ward* v. *Village of Monroeville,* 409 U. S. 57, 61–62 (1972), appellant argues that he is entitled to a lawyer-judge in the first instance. There the judge was also mayor and the village received a substantial portion of its income from fines imposed by him as judge. Similarly in *Tumey* v. *Ohio,* 273 U. S. 510 (1927), the challenge was directed not at the training or education of the judge but at his possible bias due to interest in the outcome of the case, because as in *Monroeville* he was both mayor and judge and received a portion of his compensation directly from the fines. Financial interest in the fines was thought to risk a possible bias in finding guilt and fixing the amount of fines, and the Court found that potential for bias impermissible.

Under the Kentucky system, as we noted in *Colten,* a defendant can have an initial trial before a lawyer-judge by pleading guilty in the police court, thus bypassing that court and seeking the *de novo* trial, "erasing . . . any consequence that would otherwise follow from tendering the [guilty] plea." 407 U. S., at 119–120.

Our concern in prior cases with judicial functions being performed by nonjudicial officers has also been directed at the need for independent, neutral, and detached judgment, not at legal training. See *Coolidge* v. *New Hampshire,* 403 U. S. 443, 449–453 (1971). See also, *e. g., Whiteley* v. *Warden,* 401 U. S. 560, 564 (1971); *Katz* v. *United States,* 389 U. S. 347, 356 (1967); *Wong Sun* v. *United States,* 371 U. S. 471, 481–482 (1963). Yet cases such as *Shadwick* v. *City of Tampa,* 407 U. S. 345 (1972), are relevant; lay magistrates and other judicial officers empowered to issue warrants must deal with evaluation of such legal concepts as probable cause and the sufficiency of warrant affidavits. Indeed,

in *Shadwick* the probable-cause evaluation made by the lay magistrate related to a charge of "impaired driving." [6]

## (3)

Appellant's second claim is that Kentucky's constitutional provisions classifying cities by population and its statutory provisions permitting lay judges to preside in some cities while requiring law-trained judges in others denies him the equal protection guaranteed by the Fourteenth Amendment. However, all people within a given city and within cities of the same size are treated equally.

The Kentucky Court of Appeals in *Ditty* v. *Hampton, supra,* articulated reasons for the differing qualifications of police court judges in cities of different size:

> "1. The greater volume of court business in the larger cities requires that judges be attorneys to enable the courts to operate efficiently and expeditiously (not necessarily with more fairness and impartiality).
>
> "2. Lawyers with whom to staff the courts are more available in the larger cities.
>
> "3. The larger cities have greater financial resources with which to provide better qualified personnel and better facilities for the courts." 490 S. W. 2d, at 776.

That court then noted: "That population and area factors may justify classifications within a court system has long been recognized." *Id.,* at 776–777. The Court of Appeals relied upon *Missouri* v. *Lewis,* 101

---

[6] In *Shadwick* we cautioned:

"[O]ur federal system warns of converting desirable practice into constitutional commandment. It recognizes in plural and diverse state activities one key to national innovation and vitality. States are entitled to some flexibility and leeway . . . ." 407 U. S., at 353–354.

U. S. 22 (1880), which held that as long as all people within the classified area are treated equally:

> "Each State . . . may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right." *Id.*, at 30–31.

See generally *Salsburg* v. *Maryland,* 346 U. S. 545 (1954); *Fay* v. *New York,* 332 U. S. 261 (1947); *Manes* v. *Goldin,* 400 F. Supp. 23 (EDNY 1975) (three-judge court), summarily aff'd, 423 U. S. 1068 (1976).

We conclude that the Kentucky two-tier trial court system with lay judicial officers in the first tier in smaller cities and an appeal of right with a *de novo* trial before a traditionally law-trained judge in the second does not violate either the due process or equal protection guarantees of the Constitution of the United States; accordingly the judgment before us is

*Affirmed.*

MR. JUSTICE BRENNAN concurs in the result.

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, with whom MR. JUSTICE MARSHALL joins, dissenting.

Lonnie North was haled into a Kentucky criminal court and there tried, convicted, and sentenced to a term of imprisonment by Judge C. B. Russell. Judge Russell is a coal miner without any legal training or education

whatever.[1]  I believe that a trial before such a judge that results in the imprisonment of the defendant is constitutionally intolerable.   It deprives the accused of his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments, and deprives him as well of due process of law.[2]

---

[1] The judge at North's state habeas corpus hearing concluded: "I think the fact has been established that [Judge Russell is] not a lawyer, he doesn't know any law, he hasn't studied any law." Judge Russell testified that he had only a high school education. He had never received any training concerning his duties as a lay judge.  This is not a case, therefore, involving a lay judge who has received the kind of special training that several States apparently provide.  See *ante,* at 333–334, n. 4.

A study of California's lay judges made in 1972 showed that 37% had no education beyond high school while 13% had even less formal education.  *Gordon* v. *Justice Court,* 12 Cal. 3d 323, 330 n. 7, 525 P. 2d 72, 76 n. 7.   A 1966 survey revealed that only 5% of Virginia's justices of the peace were college graduates, Note, 52 Va. L. Rev. 151, 177, while in 1958 one-half of West Virginia's justices had not completed high school, Note, 69 W. Va. L. Rev. 314, 323.   In 1969, the Assistant Attorney General of Mississippi told the State's Judiciary Commission that "33% of the justices of the peace are limited in educational background to the extent that they are not capable of learning the necessary elements of law."   Hearings on Justice of the Peace Courts and Judges before the Mississippi Judiciary Commission (testimony of R. Hugo Newcomb, Sr.), quoted in Comment, 44 Miss. L. J. 996, 1000 n. 31 (1973).

[2] At least two state courts have held that such a trial violates the United States Constitution.  *Gordon* v. *Justice Court, supra; Shelmidine* v. *Jones,* No. 224948 (Utah 3d Jud. Dist., June 3, 1975).

Contemporary studies of American court systems have been unanimous in calling for the elimination of nonlawyer judges.  See ABA Commission on Standards of Judicial Administration, Court Organization § 1.21 (1974); National Advisory Commission on Criminal Justice Standards & Goals, Task Force Report: Courts, Standard 8.1 (1973); The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 36

I

A

The reasons why a defendant in a criminal trial needs a lawyer to assist in his defense have nowhere been better put than in the oft-quoted words of Mr. Justice Sutherland's opinion for the Court in *Powell* v. *Alabama,* 287 U. S. 45:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Id.,* at 68–69.

So it was that, beginning with the capital case of *Powell* v. *Alabama, supra,* extending through the felony case of *Gideon* v. *Wainwright,* 372 U. S. 335, and culminating in the misdemeanor case of *Argersinger* v. *Ham-*

(1967); Advisory Commission on Intergovernmental Relations, State-Local Relations in the Criminal Justice System, Recommendation 21 (1971); Consensus Statement of the National Conference on the Judiciary, 55 J. Am. Jud. Soc. 29, 30 (1971).

*lin,* 407 U. S. 25, the Court's decisions firmly established that a person who has not been accorded the constitutional right to the assistance of counsel cannot be sentenced to even one day of imprisonment.

But the essential presupposition of this basic constitutional right is that the judge conducting the trial will be able to understand what the defendant's lawyer is talking about. For if the judge himself is ignorant of the law, then he, too, will be incapable of determining whether the charge "is good or bad." He, too, will be "unfamiliar with the rules of evidence." [3] And a lawyer for the

[3] Judge Russell testified that he had not received any training concerning rules of evidence and that he was not familiar with the Kentucky statutes relating to jury trials, with the Kentucky rules of criminal procedure, or with the rights guaranteed to a defendant in a criminal case under the Fourteenth Amendment.

The deposition of a lay magistrate in a South Carolina case provides another illustration of the inadequate legal background of nonlawyer judges:

"Q. What books do you have . . . that deal with the duties of Magistrate?"

Magistrate McLendon: "I got a stack of volume books from the courthouse when I got the job, little red books.

"Q. What books are those sir, do you know the names of them?"

Magistrate McLendon: "No, sir.

.          .          .          .          .

"Q. Tell me what your understanding of the Code of Laws is, what is contained in the Code of Laws, as you understand?"

Magistrate McLendon: "Well I never have done any reading in it.

"Q. You never have had occasion to refer to it?"

Magistrate McLendon: "No, sir." Deposition of Magistrate Robert McLendon, Oct. 15, 1974, p. 110, *Frierson* v. *West,* Civ. No. 74-1074 (SC May 15, 1975).

See generally Note, 61 Va. L. Rev. 1454, 1456 (1975); Note, 10 Harv. Civ. Rights—Civ. Lib. L. Rev. 739, 746–755 (1975); Note, 69 W. Va. L. Rev. 314, 323–326 (1967); Comment, 44 Miss. L. J. 996, 1004–1008 (1973); Note, 53 Ore. L. Rev. 411, 428–430, 437 n. 187 (1974).

defendant will be able to do little or nothing to prevent an unjust conviction. In a trial before such a judge, the constitutional right to the assistance of counsel thus becomes a hollow mockery—"a teasing illusion like a munificent bequest in a pauper's will." *Edwards* v. *California,* 314 U. S. 160, 186 (Jackson, J., concurring).

## B

In this case Judge Russell denied a motion for trial by jury, although under Kentucky law North was clearly entitled to a jury trial upon request. Ky. Const. § 11; Ky. Rev. Stat. Ann. §§ 25.014, 26.400 (1971). And after finding North guilty, Judge Russell proceeded to impose a sentence of imprisonment, although such a sentence was clearly unauthorized by Kentucky law. Ky. Rev. Stat. Ann. §§ 189.520 (2), 189.990 (10)(a) (1971).

But even if it were not possible to demonstrate in a particular case that the lay judge had been incompetent or the trial egregiously unfair, I think that *any* trial before a lay judge that results in the defendant's imprisonment violates the Due Process Clause of the Fourteenth Amendment. The Court has never required a showing of specific or individualized prejudice when it was the procedure itself that violated due process of law. "[A]t times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes* v. *Texas,* 381 U. S. 532, 542–543. See *Rideau* v. *Louisiana,* 373 U. S. 723; *Hamilton* v. *Alabama,* 368 U. S. 52.

A trial judge is "charged with the duty of insuring that justice, in the broadest sense of that term, is achieved in every criminal trial." *Faretta* v. *California,* 422 U. S. 806, 839 (BURGER, C. J., dissenting). See *Geders* v.

*United States,* 425 U. S. 80, 86–87. Among the critical functions that a trial judge must frequently perform are the acceptance of a guilty plea, *Henderson* v. *Morgan,* 426 U. S. 637; the determination of the voluntariness of a confession, *Jackson* v. *Denno,* 378 U. S. 368; the advising of the defendant of his trial rights, *Boykin* v. *Alabama,* 395 U. S. 238; and the instruction of a jury, *Bollenbach* v. *United States,* 326 U. S. 607, 612. A judge ignorant of the law is simply incapable of performing these functions. If he is aware of his incompetence, such a judge will perhaps instinctively turn to the prosecutor for advice and direction.[4] But such a practice no more than compounds the due process violation. See *In re Murchison,* 349 U. S. 133, 136.[5]

The Kentucky Court of Appeals characterized the kind of trial that took place here as an "absurdity." The trial,

---

[4] Judge Russell conceded that he relied on the city attorney for legal advice:

"Q. Prior to your appointment as City Judge . . . had you had any previous legal experience of any kind?"

Judge Russell: "No, sir.

"Q. Have you had any legal training of any kind since your appointment?"

Judge Russell: "Well, the only thing I can say, if I have any doubt, I just consult with the city lawyer . . . .

.         .         .         .         .

"Q. And when you receive advice from the city attorney, do you follow that advice?"

Judge Russell: "Yes, sir."

See also Deposition of Magistrate Robert McLendon, Oct. 15, 1974, p. 116 in *Frierson* v. *West,* Civ. No. 74–1074, (SC May 15, 1975) (stating that in event of request for jury trial he "would come to Mr. George Stuckey [the county attorney] and find out what I had to do").

[5] See Note, 53 Ore. L. Rev. 411, 430 (1974); Note, 61 Va. L. Rev. 1454, 1469–1470, n. 74 (1975); Note, 10 Harv. Civ. Rights—Civ. Lib. L. Rev. 739, 755 (1975).

in my view, was such an absurdity as to constitute a gross denial of due process of law.[6]

## II

The Court seems to say that these constitutional deficiencies can all be swept under the rug and forgotten because the convicted defendant may have a trial *de novo* before a qualified judge. I cannot agree.

In *Ward* v. *Village of Monroeville*, 409 U. S. 57, the Court made clear that "the State's trial court procedure [cannot] be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance." *Id.*, at 61–62. See also *Callan* v. *Wilson*, 127 U. S. 540 (right to trial by jury is right to a jury in first instance).

The Court would distinguish the *Ward* case as "directed at the need for independent, neutral, and detached judgment, not at legal training." *Ante*, at 337. But surely there can be no meaningful constitutional difference between a trial that is fundamentally unfair because of the judge's possible bias, and one that is fundamentally unfair because of the judge's ignorance of the law.[7]

---

[6] The scarcity of lawyers or legally trained persons in rural areas cannot serve to justify trials such as this. Utah, to cite one example, has managed to devise a constitutionally adequate trial system even though large portions of the State are sparsely populated and 13 of its 29 counties have two or fewer lawyers. See Utah House Bill No. 1, 1975 First Special Session, amending Utah Code Ann. § 78-5-4. See generally Note, 10 Harv. Civ. Rights—Civ. Lib. L. Rev. 739, 763–767 (1975).

[7] The Court's reliance on *Colten* v. *Kentucky*, 407 U. S. 104, is misplaced. The question in *Colten* was not whether a trial of the kind challenged here is constitutionally valid, but the quite different question whether a greater sentence can be imposed on a defendant following a trial *de novo* without violating *North Carolina* v. *Pearce*, 395 U. S. 711.

And the Court's suggestion that a defendant haled before a lay judge can protect his constitutional rights by simply pleading guilty and immediately seeking a trial *de novo* is wholly unpersuasive. First, this argument assumes without any factual support that the defendant will be informed of his right to a trial *de novo*.[8] Second, the procedure would still necessitate multiple court appearances, at the cost of both delay and an increased financial burden for attorneys' fees and court costs. Third, such a practice would turn what should be a solemn court proceeding, see *Boykin* v. *Alabama,* 395 U. S. 238, into nothing more than a sham. In short, I cannot accept the suggestion that, as a prerequisite to a constitutionally fair trial, a defendant must stand up in open court and inform a judge that he is guilty when in fact he believes that he is not.

At Runnymede in 1215 King John pledged to his barons that he would "not make any Justiciaries, Constables, Sheriffs, or Bailiffs, excepting of such as know the laws of the land . . . ." Magna Carta 45. Today, more than 750 years later, the Court leaves that promise unkept.

I respectfully dissent.

---

[8] The record indicates that North was taken to jail immediately after sentencing and obtained his freedom only when the state habeas corpus court on the following day signed a writ ordering his release. It is hardly likely that North would have spent the night in jail if he had been told that he could avoid jail simply by asking for a trial *de novo*.

The Court also states its assumption that Kentucky police court judges will advise defendants of their right to counsel and that counsel will advise their clients of their right to a trial *de novo*. See *ante,* at 335. This assumption is also devoid of support in the present record. Although Judge Russell stated that it was "the standard procedure" to advise defendants of their right to counsel, he was unwilling to state that he advised North of this right, and North unreservedly testified that he was not so advised.