In re REQUEST FOR AN OPINION OF the JUSTICES OF the DELAWARE SUPREME COURT REGARDING HOUSE BILLS NOS. 134 AND 135 OF the 146th GENERAL ASSEMBLY.

No. 535, 2011.

Supreme Court of Delaware.

Submitted: Dec. 15, 2011.
Decided: Jan. 23, 2012.

Donald E. Reid (argued), Eric S. Wilensky and Karl G. Randall, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.

Paul R. Wallace (argued) and Morgan T. Zurn, Department of Justice, Wilmington, Delaware.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

Dear Governor Markell:

The Justices each acknowledge receipt of your letter of October 6, 2011, requesting our opinions on "the question of whether House Bill Nos. 134 and 135, if both became law, would violate the Delaware Constitution or Constitution of the United States." As mentioned, 10 *Del. C.* § 141(a) and 29 *Del. C.* § 2102 permit the Justices to opine on the constitutionality of legislation passed by the General Assembly.

We conclude, for the reasons set forth, that the Bills, if signed, would not violate either the Delaware Constitution or the Constitution of the United States.

### *Origin of the Question*

House Bills 134 and 135 implement recommendations of the Committee on Speedy Trial Guidelines, issued over a decade ago, to improve the efficiency of the Delaware court system. Currently, a defendant charged with a criminal offense in Justice of the Peace Court may elect to transfer the case to the Court of Common Pleas for initial adjudication if the penalty might include imprisonment or exceed $15.[1] The existing system permits defendants facing routine traffic offenses to request a jury trial in the Court of Common Pleas, and defendants typically take advantage of this ability.[2]

Taken together, House Bills 134 and 135 permit the State to confine, in most instances, the prosecution, and the defense, of specified traffic offenses[3] to the Justice of the Peace Court.[4] The Bills accomplish this goal by raising the penalty that triggers the right to transfer the case to the Court of Common Pleas, from $15 to $100,[5] and by decreasing the penalty attached to the affected offenses to less than $100.[6] The Bills leave untouched the procedure for appealing a conviction in the Justice of the Peace Court: after conviction, a sentence cannot be appealed unless the sentence includes a fine of $100 or more or imprisonment exceeding one month.[7]

---

1. 11 *Del. C.* § 5303. The transfer mechanism is not the only avenue by which traffic offenses can leave the Justice of the Peace Court. The Delaware Constitution grants a right to appeal from the Justice of the Peace Court in "all cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)." Del. Const. art. IV, § 28.

2. Final Report, *Committee on Speedy Trial Guidelines*, 18–19 (Nov. 1, 2000) ("A large increase in requests for jury trials was cited by Judge James and the attorneys who represent criminal clients as a significant factor in the delay of cases in the Court of Common Pleas. The problem seems particularly acute with respect to jury trial requests in less serious traffic cases that do not involve incarceration as a penalty. Following the merger with Municipal Court, the Court of Common Pleas has seen a dramatic increase in jury trial requests. There seemed to be a consensus that this is because defendants who formerly went to Municipal Court, where a jury trial was not an option, are now electing to be tried in the Court of Common Pleas rather than a J.P. Court. Once in the Court of Common Pleas, litigants request jury trials simply because they are available.").

3. 21 *Del. C.* § 4123(b) (following too closely); 21 *Del. C.* § 4126(b) (Unlawful use of controlled-access highways); 21 *Del. C.* § 4169 (speeding); 21 *Del. C.* § 4176 (careless or inattentive driving); 21 *Del. C.* § 4205 (giving penalty for Chapter 41 and 42 of Title 21, where not otherwise specified).

4. 21 *Del. C.* § 703(e) (grants jurisdiction over prosecution of offenses under Title 21 to alderman's and mayor's court "where the alderman's court of the mayor's court is the court of original jurisdiction.").

5. House Bill 135.

6. House Bill 134.

7. 11 *Del. C.* § 5920 ("From any order, ruling, decision, judgment or sentence of the Court entered in a Justice of the Peace Court in a criminal action pursuant to this title in which the sentence shall be imprisonment exceeding 1 month or a fine exceeding $100, the accused shall have the right of appeal to the Court of Common Pleas in and for the county

### The Bills do not Violate the Right to a Jury Trial

■ The Bills do not violate the constitutional right to a jury trial. Unlike the Court of Common Pleas, the Justice of the Peace Court does not hold jury trials in criminal matters. No attorney in this certification proceeding has suggested that the Bills violate any right to a jury trial, and we find no reason to conclude that the Constitution of either this State or the United States demands the assembly of a jury for trials that might result in the imposition of a fine less than $100.

The Sixth Amendment of the United States Constitution provides a right to a jury trial. But that right does not apply in all criminal proceedings. The United States Supreme Court has limited the right to a jury trial to defendants facing prosecution for serious offenses; those facing prosecution for petty offenses have no right to a jury trial.[8] The Court separates serious offenses from petty ones on the basis of the severity of the penalty the legislature attaches to the offense.[9] Unless the period of potential incarceration exceeds six months, an accused has no right to a jury trial.[10] Also, a monetary penalty alone of less than $100 cannot precipitate a jury trial.[11]

The Delaware Constitution likewise provides a right to a jury trial,[12] but not for these offenses. Article I section 4 does not confer a right to a jury on the offenses covered by the Bills, because at common law offenses such as these were not tried before a jury. Because it tracks the federal jury trial right, Article I section 7 also does not confer the right.[13]

### The Bills do not Violate any Right to a Law Trained Judge

By eliminating the election to be tried in the Court of Common Pleas, the Bills also eliminate a defendant's automatic right to be tried before a law trained judge. The judges of the Court of Common Pleas must be members of the Delaware Bar.[14]

wherein the offense was committed. Such appeal to the Court of Common Pleas shall be tried de novo.").

8. *Duncan v. Louisiana*, 391 U.S. 145, 160, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) ("So-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions. There is no substantial evidence that the Framers intended to depart from this established common-law practice, and the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications."); *Blanton v. City of North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989).

9. *Blanton*, 489 U.S. at 541, 109 S.Ct. 1289.

10. *Baldwin v. New York*, 399 U.S. 66, 69, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) ("The question in this case is whether the possibility of a one-year sentence is enough in itself to require the opportunity for a jury trial. We hold that it is. More specifically, we have concluded that no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized.").

11. *Blanton*, 489 U.S. at 542, 109 S.Ct. 1289 ("Penalties such as probation or a fine may engender 'a significant infringement of personal freedom,' ... but they cannot approximate in severity the loss of liberty that a prison term entails.").

12. Art. I, § 4 ("Trial by jury shall be as heretofore."); Art. I, § 7 ("In all criminal prosecutions, the accused hath a right to ... a speedy and public trial by an impartial jury...."); *Claudio v. State*, 585 A.2d 1278 (Del.1991).

13. *Thomas v. State*, 331 A.2d 147 (Del.1975).

14. Del. Const. art. IV, § 2; 10 *Del. C.* § 1302(b) ("The judges must be citizens of the State and must have been actively engaged in the general practice of law in the State for at least 5 years.").

No such requirement applies to the judges of the Justice of the Peace Court.[15] Defendants in the latter courts will sometimes have their cases adjudicated by a law trained judge, but not always. Counsel suggests that this deprivation violates defendants' due process rights.

■ We conclude that due process does not require the right to a trial conducted before a law trained judge, at least not where the stakes for the accused are *de minimis*.[16] Presenting counsel relies on two cases, *North v. Russell*[17] and *Lecates v. Justice of the Peace Court No. 4*,[18] for the proposition that judges not trained in the law cannot satisfy minimum due process standards. The cited cases support the broad notion that law trained judges are important in some sense, but neither case supports the more narrow proposition that defendants have a constitutional right to law trained judges where the possible penalty is less than a $100 fine. Nor has the United States Supreme Court clearly stated what possible penalty a criminal defendant must face to trigger a constitutional right to a law trained judge.

In *North v. Russell*, the United States Supreme Court denied both an equal protection and a due process challenge to Kentucky's two tier judicial system. Police courts could hear misdemeanor prosecutions in the first instance.[19] But, each defendant had a right to appeal from the police court to the circuit court, and receive, *de novo*, trial before a jury, unaffected by the proceeding in the lower court.[20] Only those police courts in larger cities had law trained judges. The appellant claimed "that when confinement is a possible penalty, a law-trained judge is required by the Due Process Clause of the Fourteenth Amendment whether or not a trial De novo before a lawyer-judge is available."[21] The Court disagreed, concluding that a defendant could secure a *de novo* trial with all the required due process safeguards.[22]

*North* relies on the availability of law trained judges at a *de novo* hearing to support the constitutionality of using untrained judges in the trial court of the first instance. Presenting Counsel attempts to extract from *North* the principle that law trained judges are valuable and from that platform to argue that they are required even if the potential penalty is only a fine of less than $100. But *North* does not support such a broad reading. *North* does not so much as hint that the Due Process Clause demands a law trained judge in cases where defendants cannot be sentenced to incarceration. The question presented to the Court in *North* focused on the threat of incarceration.[23] Presenting Counsel's suggestion, in this case, that

---

15. *Lecates v. Justice of the Peace Court No. 4*, 637 A.2d 898, 900 (3d Cir.1980).

16. *Cf. Shoemaker v. Delaware*, 375 A.2d 431 (Del.1977).

17. 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976).

18. 637 F.2d 898 (3d Cir.1980).

19. *North*, 427 U.S. at 331, 96 S.Ct. 2709.

20. *Id.*

21. *Id.* at 333, 96 S.Ct. 2709.

22. *Id.* at 336, 96 S.Ct. 2709 ("We are not persuaded, however, that the Kentucky arrangement for dealing with the less serious offenses disadvantages defendants any more or any less than trials conducted in a court of general jurisdiction in the first instance, as long as the latter are always available." (quoting *Colten v. Kentucky*, 407 U.S. 104, 118–19, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972))).

23. *Id.* at 333, 96 S.Ct. 2709 ("Appellant's first claim is that when confinement is a possible penalty, a law trained judge is required by the Due Process Clause of the Fourteenth Amendment whether or not a trial *de novo* before a lawyer-judge is available.").

*North* announced a principle, favoring provision of law trained judges, that extends even to cases that do not involve possible incarceration, runs contrary to the holding of *North:*

> It must be recognized that there is a wide gap between the functions of a judge of a court of general jurisdiction, dealing with complex litigation, and the functions of a local police court judge trying a typical "drunk" driver case or other traffic violations. However, *once it appears that confinement is an available penalty,* the process commands scrutiny.[24]

In *Lecates v. Justice of the Peace Court No. 4,* an indigent civil defendant challenged a statute that required a losing defendant in the Justice of the Peace Court to post a bond before being permitted to appeal (otherwise by right) to the Superior Court.[25] The Third Circuit struck down Delaware's bond requirement as inconsistent with due process. "Having granted civil defendants such as Lecates a constitutional right to a jury trial, Delaware may not, consonant with due process, make a defendant's opportunity to enjoy the right dependent on the amount of money he has." [26] The basis for the Third Circuit's holding was that *Lecates* had a right to a jury trial but the financial burden of posting a bond foreclosed that right. Given the *de minimis* penalty found in the Bills here considered, no defendant has a right to a jury trial for offenses the Bills envision, and no other authority establishes the right to a law trained judge for offenses for which a penalty less than $100 may be imposed.

### The Bills do not Violate the Equal Protection Clause

■ Finally, Presenting Counsel contends that the Bills violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because unequal litigation opportunities exist based solely on whether the State charges an individual with a violation of the Revised Statutes that falls within or outside of the jurisdictional limits of an Alderman's Court. 21 *Del. C.* § 703(e) requires prosecutions of motor vehicle offenses in the Alderman's Courts or "mayor's courts," [27] if police arrest the person charged with that offense, without a warrant, in an incorporated municipality where that municipality's charter places original jurisdiction for these offenses in the alderman's court. That argument overlooks the fact that defendants will still have a right of appeal from Alderman's Courts despite the Bills. 21 *Del. C.* § 708(a) grants an appeal from alderman's courts as a matter of right, but permits appeal from a decision of the Justice of the Peace only if the sentence imposes either incarceration or a fine of at least $100.

■ "Statutes are presumptively valid, and will be upheld if there is any rational basis to support the legislature's classification." [28] This scheme for different appellate rights will not violate the Equal Protection Clause, because a rational basis exists for treating appeals from decisions from the two types of courts differently.

**24.** *Id.* at 334, 96 S.Ct. 2709 (citing *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (Reversing sentence imposing imprisonment because prisoner did not give knowing and intelligent waiver of his right to counsel but was nevertheless not represented by counsel)) (emphasis added).

**25.** *Lecates,* 637 F.2d at 900.

**26.** *Id.* at 909.

**27.** "Mayor's Courts" do not currently exist in Delaware.

**28.** *Forehand v. State,* 997 A.2d 673, 674 (Del. 2010).

Justices of the Peace need not be law trained judges, if that term is limited to persons admitted to the Bar or graduates of law school whether ABA accredited or not. But Delaware legislators still have ample grounds to conclude—and have concluded—that Justices of the Peace receive structured, mandated legal training beyond that required of judges in Alderman's Courts. Under 10 *Del. C.* § 9210(b), "[t]here shall be basic and continuing legal education requirements for justices of the peace which shall be as prescribed by court rule." These requirements include an initial basic legal education program upon becoming a Justice of the Peace,[29] and thirty Continuing Legal Education credits every two years.[30] Aldermen need not meet any similar criteria, though not infrequently Aldermen possess years of on the job experience with Title 21 offenses.

In any event, a state may provide different levels of judicial resources to persons in different geographic areas without violating the Equal Protection clause. For instance, Kentucky's system, addressed in *North v. Russell,* provided law trained judges in areas with greater population, but not in areas that were more sparsely populated.[31] The Court quoted, with approval, language suggesting the American system has long tolerated geographically based differences in the allocation of judicial resources:

> Each State ... may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion. Convenience, if not necessity, often requires this to be done, and it would seriously interfere with the power of a State to regulate its internal affairs to deny to it this right.[32]

The rational basis test for constitutionality demands that a law must be rationally related to a legitimate state purpose. Creating a more efficient judicial system plainly constitutes a legitimate purpose. This legislation not only may save money, but also frees up formally law trained judges to focus on cases that involve more complex issues.

### Conclusion

We conclude that House Bills 134 and 135 are constitutional.

**29.** J.P. Ct. Civ. R. 108(b)(1).

**30.** J.P. Ct. Civ. R. 108(a)(1).

**31.** *North,* 427 U.S. at 338, 96 S.Ct. 2709 ("Appellant's second claim is that Kentucky's constitutional provisions classifying cities by population and its statutory provisions permitting lay judges to preside in some cities while requiring law trained judges in others denies him the equal protection guaranteed by the Fourteenth Amendment. However, all people within a given city and within cities of the same size are treated equally.").

**32.** *North,* 427 U.S. at 339, 96 S.Ct. 2709 (quoting *Missouri v. Lewis,* 101 U.S. 22, 30–31, 25 L.Ed. 989 (1879)).