Larry **SHELMIDINE** et al., Plaintiffs
and Respondents,

v.

Charles A. **JONES** et al., Justices of the
Peace in Salt Lake County, Defendants and Appellants.

No. 14152.

Supreme Court of Utah.

May 20, 1976.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, R. Paul Van Dam, Salt Lake County Atty., Donald Sawaya, Ronald N. Boyce, Asst. Salt Lake County Attys., Salt Lake City,

Robert D. Moore, of Rawlings, Roberts & Black, Salt Lake City, for defendants and appellants.

Stephen R. McCaughey, of Salt Lake Legal Defender Assn., J. Thomas Greene, of Callister, Greene & Nebeker, Lionel Frankel, Salt Lake City, for plaintiffs and respondents.

CROCKETT, Justice:

These three plaintiffs were charged in separate cases with drunk driving in Salt Lake County and were each arraigned before one of the defendants, who are three justices of the peace. Each entered pleas of not guilty and joined in filing a petition in the district court for a writ prohibiting the defendants from proceeding in their respective cases on the ground that, inasmuch as the defendant justices of the peace were not members of the Utah Bar, to permit them to proceed with the trial and disposition of the plaintiffs' cases where possible jail sentences were involved amounts to a denial of due process of law. On the basis of his agreement with that contention, on June 3, 1975, the district court issued the writ and defendants appeal.

Plaintiffs (joined by amicus curiae, in a well prepared and scholarly brief), argue that this court should take cognizance of the fact that times have changed since 1896 when our Utah Constitution was adopted, and that we should see that the Constitution keeps pace with "progress" in social, legal and other fields by adjudicating in effect that our state Constitution has become antiquated and that the constitutionally created justices of the peace can no longer function in cases where a jail sentence may be imposed. They go back in history as far as Magna Carta, 1215 A.D.:

> No free man shall be taken, imprisoned, . . . nor will we proceed against or prosecute him, except by the lawful judgment of his peers and by the law of the land.[1]

> \* \* \* \* \* \*

> We will appoint as justiciaries, constables, sheriffs or bailiffs only such men as know the law of the land and will keep it well.[2]

There is abundance of law subsequently built upon that foundation and the concept, which we recognize as valid, that the law ought to be adapting itself to the changes and progress in society. From this it is reasoned that the ideal of a fair trial under due process of law entails the employment of the best methods known at any given time. Wherefore, we are urged to join in what is nowadays referred to as "Judicial activism" and to innovate, i. e., where the judiciary thinks the legislature lags, it will declare, not what the law is, but what it ought to be. It is argued that this requires us to declare that the constitutionally created justices of the peace,[3] who were not required to be lawyers, cannot deal with cases wherein jail sentences may be imposed, or that they cannot impose jail sentences in such cases.

We are indeed grateful, yet even reverential, for Magna Carta and the foundation it provided for the principle of the rule of law, as opposed to the whim of men (at that time the monarch); and also for what we regard as the admirable structure of law built upon that foundation. But we remind those who advocate its application here that the great charter itself was neither created by nor in any manner issued from the judiciary. It was an acknowledgment by the sovereign, recognizing and granting the rights and immunities declared therein. This is comparable to constitutional declarations under our system. In our form of government as established by our constitution, it is fundamental that the sovereign is the people. A parallel of reasoning would lead to the

---

1. Magna Carta, Chap. 39.

2. Id., Chap. 45.

3. Utah Constitution, Art. VIII, Sec. 1.

conclusion that such a constitutional or legislative change should come from that sovereign: the people.

■ It is equally clear that our constitution sets up three separate branches of government: the executive, the legislative, and the judicial, each of which has its particular function to perform. Due to the manner in which our system was created and has developed, the judiciary has the awesome prerogative and responsibility of judging the scope of powers of the executive, legislative, and of its own.[4] For this reason it is essential that the judiciary be especially circumspect in maintaining an awareness of the natural propensity of human nature: that when anyone has the power to decide wherein his own interests are involved, there is danger of consciously or subconsciously leaning toward the protection, and perhaps the magnification, of his own self-interest.

■ We do not mean to be understood as saying that we shrink from the responsibility, when properly invoked, of giving due consideration to claims that legislative enactments are subordinate to the superior law: constitutional provisions. Also, it should be borne in mind that there is a definite distinction between a change in interpretation or application of a statute, which sometimes quite justifiably occurs, and attempting by judicial fiat to affect a substantial change in law as clearly expressed in a statute or the constitution. When such a substantial change is necessary or desirable, our constitution has set up procedures for the change by the legislature, or of the constitution, by the amendment process.

■ It is our opinion that it is vital to the proper functioning of our government and to its endurance that those procedures be followed; and that the duties and prerogatives of each department should be scrupulously respected by the others, thus leaving the function where the constitution puts it. It is our belief that in our 200 years' history the American judiciary have, for the most part, been aware of the sensitivity of their position and generally have a pretty good record for keeping within the confines of their proper authority and function. Consistent with that objective, it is quite universally recognized that courts will not strike down enactments of law unless there is some compelling reason to do so.[5] We acknowledge, of course, that there are exceptions where courts have yielded to the allurements of power and tended to overreach into the roles intended for the executive and legislative branches.[6]

■ It will be seen from what we have said above that we think there is a substantial barrier to be encountered in making an analysis and judicial determination of the merits or the demerits of the justice of the peace system as established by our state constitution. However, in view of the plaintiffs' arguments thereon which seem to have persuaded the trial court, and the public interest manifest in this general subject, we make what we think are some appropriate observations: A large part of our State of 29 counties consists of sparsely settled mountain and desert areas. Less than a third of our counties could even now be regarded as urbanized to any substantial extent. Our constitution was fashioned by the founders in awareness of the general nature of our State; and we should assume that they created the system in the realization of the necessity and desirability of providing a realistic and expeditious means for law en-

4. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).

5. *Newcombe v. Ogden City Public Schools, etc.*, 121 Utah 503, 243 P.2d 941 (1952); and see 16 Am.Jur.2d, Constitutional Law, Sec. 175.

6. A multitude of examples exist. Perhaps none is better than in the racial desegregation cases (with the principle of desegregation we are in accord), where the courts, not contented with the correct adjudications of the principles of law, go on to devise plans for implementation and supervision, such as school busing.

forcement and the administration of justice, particularly so in those rural areas, as the conditions then existed and as they still exist in our State. According to the annual roster of attorneys for 1975, there are no attorneys resident in five of our counties, one county has only one, three counties have only two, and several others have only three or four attorneys.

▪ It is thus seen that in a considerable portion of our State there are some very practical problems in placing restrictions upon justices of the peace and requiring professionalized courts to handle minor offenses. If it were not for those justices in our sparsely populated rural counties an accused would often encounter inconvenience in delay of time and distance of travel before he could have his case disposed of. It seems to be a sound observation that our justice of the peace system has and continues to serve a useful purpose by providing a readily accessible and expeditious means of handling of minor cases; and that it is more of an aid in assuring the constitutional guarantees of a speedy disposition of one's case, and thus of due process of law, than the contrary.[7]

▪ For the reasons stated herein we are unable to agree with the ruling of the district judge:[8] that the portion of our own constitution which vested the challenged power in justices of the peace, is itself unconstitutional.[9] Consequently, it is our conclusion that the writ was improperly issued and it is ordered recalled.

The foregoing disposes of the issue presented on this appeal and requires the remand of these cases for further proceedings. In that regard something further needs to be said. Rule 76(a), U.R.C.P., provides that when a case is remanded for further proceedings the court shall comment upon law that may be applicable.[10] After the filing of these charges against the petitioners; and after the district court's decision and the issuance of the writ on June 3, 1975, our legislature followed the correct and constitutional procedure, as hereinabove stated, for making substantive changes in our law by enacting Chapter 4, Section 1 of First Special Session, Laws of Utah, 1975. It provides that a person charged with an offense which carries a possible jail sentence has a right to request that the proceeding be handled by a judge who is a member of the state Bar.

▪ We have heretofore held that if, after the commission of the offense, but before a trial and entry of judgment, a statute is amended to prescribe a lesser penalty, the defendant is entitled to the benefit of the lesser punishment.[11] This is in harmony with the general policy of the law according one accused of crime the most favorable aspect of the law which is being applied against him. As was said in *Ringwood v. State*,[12] ". . . in case of alternative choices, he [the defendant] can comply by selecting the one which is the least burdensome or least offensive to him. . . ." Consistent with that policy, the same principle should apply in matters of procedure. Thus, inasmuch as there has been no trial or sentence, these accused

---

7. See statement in *Crouch v. Justice of the Peace, etc.*, 7 Ariz.App. 460, 440 P.2d 1000 (1968).

8. The long established rule is that lower courts should have even greater reluctance in striking down laws as unconstitutional, see *Pacific Livestock Co. v. Ellison Ranching Co.*, 46 Nev. 351, 213 P. 700; *State v. Taylor*, 49 Haw. 624, 425 P.2d 1014; 16 C.J.S. Constitutional Law, § 93; 16 Am. Jur.2d, Constitutional Law, Sec. 175.

9. We do so in awareness of *Gordon v. Justice Court*, 12 Cal.3d 323, 115 Cal.Rptr.

632, 525 P.2d 72 (1974), which was decided under a statutory scheme different from Utah's.

10. See also, *Johnson Corp. v. Peterson*, 18 Utah 2d 260, 420 P.2d 615 (1966).

11. See *State v. Tapp*, 26 Utah 2d 392, 490 P.2d 334 (1971), and *Belt v. Turner*, 25 Utah 2d 230, 479 P.2d 791 (1971).

12. 8 Utah 2d 287, 333 P.2d 943 (1959); and see 21 Am.Jur.2d, Criminal Law, Sec. 579.

should be accorded the privilege of choosing to have their respective cases handled by a judge who is a member of the state Bar if they so desire.

Remanded for further proceedings in accordance with this decision. No costs awarded.

HENRIOD, C. J., and ELLETT, J., concur.

MAUGHAN, Justice (concurring):

With that part of the opinion remanding the matter for further proceedings pursuant to the statute, I concur.

TUCKETT, J., concurs with the view expressed in the concurring opinion of MAUGHAN, J.