[Nos. 44071, 44214. En Banc. January 10, 1977.]

GARY ROBERT YOUNG, ET AL, *Respondents,* v. STEPHEN S. KONZ, *Appellant.*

OSEAS MUNOZ, ET AL, *Petitioners,* v. CECIL HARPHAM, *Respondent.*

*Slade Gorton, Attorney General,* and *Garry E. Wegner, Assistant,* for appellant.

278

*Theodore S. Goodwin* and *Terry Austin* of *Yakima Valley Legal Services* (*Mark E. Wilson,* of counsel), for petitioners.

*David S. Edwards* of *Colville Tribal Legal Services,* for respondents Young, et al.

*R. P. Reid,* for respondent Harpham.

*George Wynn Colby* on behalf of Yakima Nation Public Defender and *Steven L. Michels,* amici curiae.

HUNTER, J.—This is an appeal by the State from an order granting a writ of prohibition, entered on December 1, 1975, by the Superior Court for Ferry County. The writ of prohibition denies the judge of the Ferry County district court, and all other lay (nonattorney) judges, their jurisdiction over criminal misdemeanor matters, where a loss of liberty could result.

The judge of the Ferry County district court qualified for his position on that bench by passing a qualifying examination pursuant to RCW 3.34.060. He is not a lawyer, and the statute does not require him to be, since the district has less than 10,000 population.

Consolidated with this appeal is cause No. 44214, wherein we stayed proceedings on misdemeanor trials of six individuals being tried before the municipal police judge of Granger. He is a nonlawyer judge appointed by the mayor pursuant to RCW 3.50.040.

The issue in both cases is the same. Are the defendants denied due process under article 1, section 3, of our state constitution, and under the fourteenth amendment to the United States Constitution, when tried before a nonlawyer judge in a court of limited jurisdiction for a misdemeanor wherein a loss of liberty could result?

The judges in both causes are empowered to imprison defendants that come before them; their jurisdiction is the same as the criminal jurisdiction of attorney judges in district and municipal courts. (That includes all misdemeanors and gross misdemeanors, RCW 3.20.040; preliminary hearings, RCW 10.04.030 and RCW 10.16.010; bail, RCW 3.50-.210; warrants, RCW 3.50.160 and RCW 3.28.020.)

The judicial scheme for Washington is as follows. Article 4, section 17 of the state constitution requires that judges of the Supreme Court and the superior court be admitted to practice law. The same requirement exists for judges of the Court of Appeals. RCW 2.06.050. The constitution is silent as to qualifications of judges for courts of limited jurisdiction, and there are no *general* qualifications provided by statute. (RCW 3.04.010 *et seq.*) However, justices of the peace in cities of 5,000 or more must be attorneys. RCW 3.12.071. Municipal court judges need not be lawyers in municipalities with less than 5,000 people. RCW 3.50-.040. District court or "justice court" judges and justices of the peace must, if not attorneys, either have served as a justice of the peace or municipal or police court judge. In districts with less than 10,000 population, they are allowed to sit as judges if they pass an examination provided by the Supreme Court. RCW 3.34.060. Until recently, there was the requirement that justices of the peace and district court judges in second class (at least 70,000 population, RCW 36.13.010) and larger counties be attorneys. RCW 3.34.065. That statute, however, has since been repealed by Laws of 1975, 1st Ex. Sess., ch. 197, p. 654. The effect of the repeal is that any nonattorney who has served as justice of the peace, municipal judge, or police judge prior to 1961 may stay on the bench or refile for the position without passing even a qualifying examination. RCW 3.34.060.

De novo review is available to all defendants. The review is in superior court, always before lawyer judges. RCW 3.50.410.

The petitioners (defendants) contend they will be denied a fair trial before the respective nonlawyer judges because

the judges are not trained in law and hence will not reccgnize all the issues involved in affording a fair trial. They argue that difficult issues can arise even in misdemeanor trials, and bulwark their argument with a citation to the United States Supreme Court cases of the past 15 years that have significantly augmented the protections afforded defendants under the constitution. They note that there are new rules of law constantly evolving under the constitution in the areas of search and seizure, self–incrimination, double jeopardy, the admissibility of confessions, a speedy and public trial, compulsory processes, right to counsel, and acceptance of guilty pleas.

The only authority cited by petitioner which is in point is *Gordon v. Justice Court,* 12 Cal. 3d 323, 525 P.2d 72, 115 Cal. Rptr. 632 (1974). The California Supreme Court there decided that state's system, insofar as it allowed nonattorney judges to preside over criminal trials where a loss of liberty could result, denied due process. The court reasoned that although a fair criminal trial was not impossible before a lay judge, the likelihood of a fair trial was substantially enough diminished that the procedure itself violated due process.

We do not find *Gordon* to be persuasive authority, since the United States Supreme Court has since found no federal due process or equal protection violation in a lay–judge system. *North v. Russell,* 427 U.S. 328, 49 L. Ed. 2d 534, 96 S. Ct. 2709 (1976).

Should it develop in this state that a defendant in superior court is denied a fair trial by erroneous application of the law, he may appeal, demonstrate the error to the reviewing court, and be granted a new trial. Due process of the law requires a fair trial for each defendant; the fair trial guaranty is protected *through the appeals process.* It is conceded that a fair trial may in certain cases not be afforded by a nonlawyer judge; but we may properly point out that it is also true that a lawyer judge may commit error and thereby deny a fair trial. The due process safeguard in both cases is appeal, the one critical difference

being that a defendant in a court of limited jurisdiction has the *automatic right* to a new trial, irrespective of error in the first trial. This we find to be an adequate safeguard to meet due process requirements.

We agree that a more desirable system would be that which affords every civil litigant and defendant trial before lawyer judges in the first instance. However, our preferences are not sufficient to establish a due process violation under the present system.

The Utah Supreme Court, faced recently with a similar challenge to their system of lay judges in municipal courts, held that the system did not violate due process. *Shelmidine v. Jones,* 550 P.2d 207 (Utah 1976). The court reasoned that without the lay justice system an accused in that state's rural areas would often encounter inconvenience in delay of time and distance of travel, and therefore the system did more to *assure* the constitutional guaranty of due process than to undermine it.

The Utah court' stated that it was the legislature's province to revamp the courts of limited jurisdiction, and not the prerogative of the judiciary. Citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803), the court emphasized circumspection in assuring that courts not yield to the "allurements of power" and "overreach into the roles intended for the executive and legislative branches." *Shelmidine v. Jones, supra* at 210.

The following language on page 210 from *Shelmidine* reflects our sentiments.

> We do not mean to be understood as saying that we shrink from the responsibility, when properly invoked, of giving due consideration to claims that legislative enactments are subordinate to the superior law: constitutional provisions. Also, it should be borne in mind that there is a definite distinction between a change in interpretation or application of a statute, which sometimes quite justifiably occurs, and attempting by judicial fiat to affect a substantial change in law as clearly expressed in a statute or the constitution. When such a substantial change is

necessary or desirable, our constitution has set up procedures for the change by the legislature . . . by the amendment process.

██ We feel that eliminating lay judges is the province of the legislature in this state, as pertinent constitutional provisions indicate. Const. art. 4, §§ 1, 10. The legislature is better able to act on our shared interest in upgrading the courts of limited jurisdiction, and at the same time preserve easy accessibility to a forum for the convenient, swift, and inexpensive disposition of minor cases.[1] We note that the Utah legislature quickly responded to the problem with an amendment once the issue had been raised to the court. Kentucky's legislature also acted to eliminate their lay judges, although the United States Supreme Court upheld their constitutionality, as we next discuss.

*North v. Russell, supra* at 334–35, is the authority most helpful to our decision. The issues and arguments were essentially the same as we are presented with in this case:

> Appellant argues that the right to counsel articulated in *Argersinger* v. *Hamlin, supra,* [407 U.S. 25 (1972)] and *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), is meaningless without a lawyer–judge to understand the arguments of counsel. Appellant also argues that the increased complexity of substantive and procedural criminal law requires that all judges now be lawyers in order to be able to rule correctly on the intricate issues lurking even in some simple misdemeanor cases. In the context of the Kentucky procedures, however, it is unnecessary to reach the question whether a defendant could be convicted and imprisoned after a proceeding in which the only trial afforded is conducted by a lay judge. In all instances, a defendant in Kentucky facing a criminal sentence is afforded an opportunity to be tried *de novo* in a court presided over by a lawyer–judge since an appeal automatically vacates the conviction in police court. Ky. Rev. Stat. Ann. § 23.032 (1971); Ky. Rule Crim. Proc. 12.06. The trial *de novo* is available after either a trial *or*

---

[1] A necessary step to the end of providing lawyer judges in all cities and rural areas of the state could well be subsidizing by the state, as there will be increased costs attendant such a system.

*a plea of guilty* in the police court; a defendant is entitled to bail while awaiting the trial *de novo.* 516 S. W. 2d 103 (Ky. 1974).

(Italics ours.)

The United States Supreme Court held there was no denial of due process in Kentucky's system. It is argued, however, that the italicized language indicates a critical distinction between Kentucky's system and ours. Kentucky's system allows appeal from a guilty plea; our system does not.

█ We do not believe this is a sufficient distinction to effect the impact of *North* on the present case. We have held that the reason no appeal is permissible upon a plea of guilty is that the guilty plea constitutes a *waiver* by the defendant of his right to appeal. *State v. Eckert,* 123 Wash. 403, 212 P. 551 (1923). However, where collateral questions, such as the validity of the statute, the sufficiency of the information, the jurisdiction of the court, or the circumstances under which the plea was made, are raised, an appeal from a guilty plea is allowed. *State ex rel. Fisher v. Bowman,* 57 Wn.2d 535, 358 P.2d 316 (1961). Our conclusion is that due process is not abridged by the fact that an accused who elects to plead guilty may not have a new trial. *North* did not turn on that issue, hence the value of *North* as authority herein is in no way diminished.

█ Neither do we find the present system violative of equal protection of the laws. The United States Supreme Court in *North* upheld the right of states to classify areas within the state, establishing one system of courts for populated areas and another for rural areas. The court held that a state does not deny equal protection of the laws to an accused by providing law trained judges for some police courts and lay judges for others, as long as all people within each classified area are treated equally.

We find that the problem of lay judges is a matter for legislative and not for judicial resolution. Accordingly, the writs of prohibition in Supreme Court causes Nos. 44071

and 44214 are hereby quashed and defendants will proceed to trial.

STAFFORD, C.J., and HAMILTON, WRIGHT, and BRACHTEN-BACH, JJ., concur.

UTTER, J. (dissenting)—The majority approves the exercise of criminal misdemeanor and gross misdemeanor jurisdiction by a nonlawyer district court judge and nonlawyer municipal police court judge, over defendants brought before their courts. It concedes due process of law under both the federal and Washington constitutions requires a fair trial for each defendant and recognizes that a fair trial may not be afforded in some cases before a nonlawyer judge. Having conceded this, however, it concludes the fair trial guaranty is protected through the appellate process which allows a trial de novo in superior court. This argument is unpersuasive.

The quality of the first trial is as important to the fabric of justice as the quality of the second. It requires no extensive fact–finding hearing to appreciate that many defendants charged with traffic or other offenses heard in the courts here at issue cannot afford either the time or money to avail themselves of a de novo appeal. For them the first trial is their only trial and that proceeding should be conducted with the same skill and dignity as the second one, which they may never be able to afford.

The reasons discussed by the dissent in *North v. Russell*, 427 U.S. 328, 49 L. Ed. 2d 534, 96 S. Ct. 2709 (1976), for invalidating the 2–tier justice court system seem to me to be persuasive, and I conclude that we should hold criminal defendants have a due process right to trial before a law-yer–judge under article 1, section 3 of our constitution.[2] Justice Stewart in that dissent, at page 342, emphasized the presupposition underlying the acknowledged right to assistance of counsel is "that the judge conducting the trial

[2]"No person shall be deprived of life, liberty, or property, without due process of law." Const. art. 1, § 3.

will be able to understand what the defendant's lawyer is talking about." His dissent was equally disdainful of the attempt by the majority in *North* to limit the application of *Ward v. Monroeville*, 409 U.S. 57, 61–62, 34 L. Ed. 2d 267, 93 S. Ct. 80 (1972), wherein the court held, "'the State's trial court procedure [cannot] be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance.'" In commenting on the *North* majority opinion, Justice Stewart stated, "[t]he Court would distinguish the *Ward* case as 'directed at the need for independent, neutral, and detached judgment, not at legal training.' . . . But surely there can be no meaningful constitutional difference between a trial that is fundamentally unfair because of the judge's possible bias, and one that is fundamentally unfair because of the judge's ignorance of the law." *North v. Russell, supra* at 345.

By adopting the reasoning and language of Justice Stewart's dissent I do not mean to indicate I believe the majority in *North* is controlling. Of critical importance to the majority in that case was the right of trial de novo following a plea of guilty. "Under the Kentucky system, as we noted in *Colten*, [*Colten v. Kentucky*, 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972)] a defendant can have an initial trial before a lawyer–judge by pleading guilty in the police court, thus bypassing that court and seeking the de novo trial, 'erasing . . . any consequence that would otherwise follow from tendering the [guilty] plea.' 407 U. S., at 119–120." *North v. Russell, supra* at 337.

The majority in this opinion recognizes de novo review is not available from a judgment entered on a plea of guilty and as such the rationale for the majority in *North v. Russell, supra,* does not apply. We should also not give the impression that a district court judge qualifies for his position on that bench by passing an examination pursuant to RCW 3.34.060. While such an examination is apparently required by statute, to my knowledge an examination has

not been given to date to nonlawyer district court judges. If that examination is in fact to be meaningful, I would assume it would require the same degree of proficiency, at least insofar as evidence, criminal procedure, criminal law, and constitutional law, as is required of law school graduates. It is unrealistic to expect lay judges to be able to pass such a meaningful examination.

For the foregoing reasons, I would affirm the trial court and, therefore, dissent.

ROSELLINI, HOROWITZ, and DOLLIVER, JJ., concur with UTTER, J.

Petition for rehearing granted September 2, 1977.

