William J. SHOEMAKER, III, Defendant
below, Appellant,

v.

STATE of Delaware, Plaintiff
below, Appellee.

Supreme Court of Delaware.

Submitted Aug. 16, 1976.

Decided May 13, 1977.

Gary W. Aber of Biggs & Battaglia, Wilmington, for defendant-appellant.

Richard J. McMahon, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

DUFFY, Justice:

Defendant appeals from a Superior Court order dismissing his appeal of a conviction in a Justice of the Peace Court for disorderly conduct. We reverse.

I

The critical question in this significant case concerns neither the facts of the alleged offense nor the statute under which defendant was prosecuted. The issues center, first, on the jurisdictional basis of any review of the proceeding in the Justice of the Peace Court and, second, on the right of a non-lawyer judge to conduct that proceeding. Before discussing these questions we must place them in context.

A Justice of the Peace found defendant guilty of disorderly conduct, in violation of 11 *Del.C.* § 1301(1)(b),[1] and thereafter he was sentenced to seven days imprisonment and assessed costs.[2] The Magistrate who presided at trial and imposed sentence was not a lawyer.[3] Defendant appealed to the Superior Court and made the constitutional arguments we discuss today; that Court granted the State's motion to dismiss the

appeal. Defendant appealed; after submission but before decision, we were advised that one of the important questions presented was then pending before the Supreme Court of the United States. For that reason this appeal was stayed to await the decision. The Supreme Court issued its opinion in *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976), and thereafter counsel briefed the effect of *North* on this case. With that completed, this appeal was ready for determination.

II

The significant constitutional question presented to us under *North* is this: Does the Delaware Justice of the Peace Court system violate the due process clause of the Fourteenth Amendment by authorizing a non-lawyer judge to preside over a criminal proceeding involving charges which may result in incarceration?

That is the second of our two questions but before answering it, we must be satisfied as to our jurisdiction. In short, there must be a jurisdictional basis for review of the conviction by the Magistrate both by the Superior Court and by this Court before we may proceed. So we turn to that threshold consideration.

A.

It is settled law in Delaware that the Supreme Court "has only such powers as are granted to it by statute or the Constitution, . . .," *Steigler v. Superior Court, In and For New Castle Co.,* Del.

---

1. 11 *Del.C.* § 1301, a class B misdemeanor, provides in pertinent part that:

   "A person is guilty of disorderly conduct when:

   (1) He intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by:

   .  .  .  .  .

   (b) Making an unreasonable noise or an offensively coarse utterance, gesture, or dis-

   play, or addressing abusive language to any person present; . . . ."

2. 11 *Del.C.* § 4206(b) provides that the sentence "for a Class B misdemeanor shall be fixed by the court and shall not exceed 6 months imprisonment and such fine or other conditions as the court may order."

3. The State Constitution does not specify qualifications for appointment as Justice of the Peace. See Art. IV, §§ 29, 30. Compare Art. IV, § 2 as to qualifications for other "State Judges."

Supr., 252 A.2d 300, 302 (1969), *cert. den.,* 396 U.S. 880, 90 S.Ct. 160, 24 L.Ed.2d 139 (1969), aff'd, Del.Supr., 277 A.2d 662 (1971), and that "[t]he right to . . . [appellate review] exists only when and to the extent provided in the Constitution and laws of this State." *McCoy v. State,* Del. Supr., 217 A.2d 496, 497 (1966). The mere presence of a constitutional question, no matter how important, is not sufficient to confer jurisdiction upon this Court.

■ The appellate jurisdiction of the Superior Court is similarly limited. In particular, Art. IV, § 28 of the Constitution, which prescribes the Superior Court's jurisdiction over criminal appeals from a Justice of the Peace Court, states:

> "The General Assembly may by law give to any inferior courts by it established or to be established, or to one or more justices of the peace, jurisdiction of the criminal matters following, that is to say—assaults and batteries, carrying concealed a deadly weapon, disturbing meetings held for the purpose of religious worship, nuisances, and such other misdemeanors as the General Assembly may from time to time, with the concurrence of two-thirds of all the Members elected to each House, prescribe:
>
> The General Assembly may by law regulate this jurisdiction, and provide that the proceedings shall be with or without indictment by grand jury, or trial by petit jury, *and may grant or deny the privilege of appeal to the Superior Court; provided, however, that there shall be an appeal to the Superior Court in all cases in which the sentence shall be imprisonment exceeding one (1) month, or a fine exceeding One Hundred Dollars ($100.00)."* (Emphasis added.)

The General Assembly has not granted the privilege of appeal in a disorderly conduct case in which the sentence of imprisonment does not exceed one month.

■ Citing Art. IV, § 28, the Superior Court determined that it lacked jurisdiction over defendant's appeal since his sentence was for less than one month. We agree that the plain language of the Constitution compels such a ruling. Moreover, it is equally clear that Art. IV, § 11(1)(b) [4] of the Constitution bars this Court from considering an appeal of the instant conviction for the same reason. But it does not necessarily follow that the law fails to provide to this defendant a right to judicial review of his conviction and sentence. On the contrary, in the absence of a right of appeal, when a sentence of incarceration has been imposed and a defendant puts in issue a substantial constitutional question challenging the jurisdiction of the Justice of the Peace to try and sentence him, we believe that justice requires that the proceeding be reviewable at least under the common law writ of *certiorari.* We so hold.

## B.

A *certiorari* proceeding invokes one of the oldest common law writs, tracing its origins to the Norman Kings. 98 *U.Pa.L.Rev.* 733, 735 (1950). In England, the writ was used primarily by judges of the King's Bench to supervise the conduct of inferior court officers. *Id.* [5]

Briefly, "*certiorari* is a writ issued by a superior to an inferior court of record, requiring the latter to send to the former . . . the record and proceedings in some cause already terminated, to the end that a party who considers himself aggriev-

4. Art. IV, § 11(1)(b) authorizes the Supreme Court:

   "To receive *appeals* from the *Superior Court* in *criminal causes,* upon application of the accused in all cases in which the *sentence* shall be death, *imprisonment exceeding one month,* or *fine exceeding One Hundred Dollars,* and in such other cases as shall be provided by law, and to determine finally all matters of appeal on the judgments and pro-

   ceedings of said Superior Court in criminal causes: Provided, however, that appeals from the Superior Court in cases of prosecution under Section 8 of Article V of this Constitution shall be governed by the provisions of that Section." (Emphasis added.)

5. For an early history of the writ in Delaware, see *Rash v. Allen,* Del.Super., 1 Boyce 444, 76 A. 370, 374–5 (1910).

ed by the determination of his rights by the inferior court, . . . may have justice done him." Woolley, *Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware,* § 894, at 623 (1906); *Bicow v. Delaware Alcoholic Beverage Con. Com'n.,* Del.Super., 297 A.2d 397, 400 (1972). A *certiorari* proceeding differs fundamentally from an appeal in that the latter "brings the case up on its merits while the . . . [former] brings up the record only so that the reviewing court can merely look at the regularity of the proceedings." 4 *C.J.S.* Appeal and Error § 17, at 93 (1957); *Schwander v. Feeney's,* Del.Super., 3 Terry 198, 29 A.2d 369, 371 (1942); *Godfrey v. Thompson,* Del.Super., 1 Marv. 298, 300, 40 A. 1116 (1894) (dissenting opinion); *Woolley, supra,* § 900, at 627.

*Certiorari* is a proceeding both old and new. While its origins are obscure in the history of medieval England, we need look no further than the current Delaware Constitution for its present place in our legal system. Under the constitutional and statutory law of Delaware, both the Supreme and Superior Courts have authority to issue writs of *certiorari.* The Constitution [6] invests the Supreme Court with authority to issue the writ "to the Superior Court, the Court of Chancery . . ., or any of the Judges of the said courts and also to any inferior court or courts established or to be established by law and to any of the Judges

thereof . . .." See also 10 *Del.C.* § 142.[7] Simarily, the Superior Court may issue the writ [8] to all inferior tribunals, "particularly, the Justice of the Peace Court.[9] *Woolley, supra,* § 896, at 624.

Historically, an important function of *certiorari* was to provide a remedy for a party alleging that a lower court had acted without jurisdiction. *Woolley* puts it this way: the writ permits review for "a party who considers himself aggrieved by the determination of his rights by the inferior court, without or in excess of its jurisdiction or without compliance with the requirements of law," so that justice may be done for him. *Woolley, supra,* § 894, at 623. The point was made with more pertinent precision by Chief Justice Layton, writing for a three-Judge Court, in *Becker v. State,* Del.Super., 7 W.W.Harr. 454, 185 A. 92, 96 (1936), in language peculiarly applicable here. That was a *certiorari* proceeding to review a Municipal Court conviction from which there was no appeal. The Court found that the statute in question violated the Fourteenth Amendment and thus was unconstitutional. But before so holding on the merits, the Court determined that it would consider the constitutional issue although it had not been raised in the Trial Court. The Court said:

"The jurisdiction of the lower court, by the act, is final. The right of appeal is denied. A question of grave public policy

**6.** Del.Const., Art. IV, § 11(6), empowers the Supreme Court:

"To issue writs of prohibition, quo warranto, certiorari and mandamus to the Superior Court, the Court of Chancery . . ., or any of the Judges of the said courts and also to any inferior court or courts established or to be established by law and to any of the Judges thereof and to issue all orders, rules and processes proper to give effect to the same. . . ."

**7.** 10 *Del.C.* § 142 provides:

"Writs of certiorari, issuable out of the Supreme Court, shall be writs of right and not of grace, and shall be sued out of and be issued out of the Court without petition therefor or the allocatur of any Judge or order of the Court."

**8.** 10 *Del.C.* § 562 provides:

"The Superior Court may frame and issue all remedial writs, including writs of habeas

corpus and certiorari, or other process, necessary for bringing the actions in that Court to trial and for carrying the judgments of the Court into execution. All writs shall be granted of course and shall be in such form and returnable at such time as may be prescribed by the rules of the Court, or otherwise as the particular case may require."

**9.** On this point *Woolley* comments: "Of the tribunals to which the writ is most frequently addressed and of the judgments and proceedings most frequently brought under review by force of this remedy, the courts and judgments of justices of the peace largely exceed all others." *Woolley, supra,* § 896, at 624. For a general examination of the use of the writ of *certiorari* to review decisions of Justices of the Peace see 51 *C.J.S.* Justices of Peace §§ 243–266 (1967).

and interest is involved, and whatever may be the rule in other jurisdictions, whether founded on statute or practice, we know of no authority in this state which forbids this court, in a certiorari proceeding, to determine the constitutionality of a statute under which a conviction was had in an inferior court, with no right of appeal, even if the constitutional question was not there presented." *Id.* We approve those views.

### C.

We think it clear that, under these statements of Delaware law, *certiorari* was available to this defendant to challenge in the Superior Court the jurisdiction of the Justice of the Peace Court to try and sentence him to jail without a non-lawyer judge. As in *Becker,* the act of the Justice of the Peace was final (sentence had been imposed); the right of appeal was denied (by Art. IV, § 28); a question of grave public policy and interest was involved (did the sentence imposed by a non-lawyer judge violate the Fourteenth Amendment?); and no other basis for review was available. See 14 *C.J.S.* Certiorari § 37, at 178 (1939) and cases cited therein; 51 *C.J.S. supra,* Justices of Peace at 443. Accordingly, although the Superior Court properly refused to consider the instant case on appeal, it should have followed *Becker,* regarded the application as arising on *certiorari,* and taken jurisdiction on that basis.

On the same rationale, we deem the case to be in this Court as though on *certiorari,* that is, from affirmance by the Superior Court of the Justice of the Peace conviction;[10] therefore, we have jurisdiction to consider and determine the issues presented.

Jurisdiction having been established, we return to the constitutional question raised under *North.*[11]

### III

Chief Justice Burger, speaking for the Court in *North,* began by stating the question as follows:

"The question presented in this case is whether an accused, subject to possible imprisonment, is denied due process when tried before a nonlawyer police court judge with a later trial *de novo* available under a State's two-tier court system; and whether a State denies equal protection by providing law-trained judges for some police courts and lay judges for others, depending upon the state constitution's classification of cities according to population."

96 *S.Ct.* at 2710.

With two Justices dissenting, the Court answered both questions in the negative. The Court reasoned that a defendant charged with a misdemeanor, for which he may be imprisoned, is not denied due proc-

---

**10.** The Superior Court granted the State's motion to dismiss the appeal on the ground that it was barred by Art. IV, § 28. But before ordering dismissal the Court considered and rejected defendant's arguments based on the Equal Protection Clause and the right to a jury trial. The Court also concluded that because defendant had waived his 11 *Del.C.* § 5303 right to trial in Common Pleas Court, it need not decide his contention, grounded on *Gordon v. Justice Court for Yuba Judicial District of Sutter County,* 12 Cal.3d 323, 115 Cal.Rptr. 632, 525 P.2d 72 (1974), that he was entitled to be tried by a law-trained judge.

**11.** Relying on the Equal Protection Clause of the Federal Constitution, defendant argues with vigor and abundant analysis that Art. IV, § 28 may not be applied to deny him a right of appeal to the Superior Court. He documents differences among the Delaware Statutes which (1) permit appeals from convictions before an alderman or mayor, 11 *Del.C.* § 4503; of Motor Vehicle Laws, 21 *Del.C.* § 708; of regulations relating to plant diseases, 3 *Del.C.* § 1107, and cattle diseases, 3 *Del.C.* § 7338; for hunting while snow is on the ground, 7 *Del.C.* §§ 713, 1309(b), and a long list of offenses relating to dogs, birds, mattresses and more, but which (2) deny him a right of appeal in this case. *We agree that there appears to be an haphazard irrationality about the statutory plan which permits appeal for some offenses and denies it for others more serious. Clearly, the matter is important and calls for legislative review before this Court is again asked to strike Art. IV, § 28 on Federal constitutional grounds.* But, in view of our analysis of the issues here, we do not reach the equal protection argument in this case.

ess when he is tried before a non-lawyer judge when, upon conviction and appeal, a trial *de novo* is available before a lawyer-judge. And it found no denial of equal protection arising from a State constitutional provision which provided law-trained judges in some cities but not in others, depending upon population. In sum, the Court concluded that:

"[T]he Kentucky two-tier trial court system with lay judicial officers in the first tier in smaller cities and an appeal of right with a *de novo* trial before a traditionally law-trained judge in the second does not violate either the due process or equal protection guarantees of the Constitution of the United States, . . ."

96 *S.Ct.* at 2714.

Argued but not decided in *North* was the question of whether a non-lawyer judge, when no other trial is available, could constitutionally sentence a defendant to a term of incarceration; Chief Justice Burger wrote:

"In the context of the Kentucky procedures, however, it is unnecessary to reach the question whether a defendant could be convicted and imprisoned after a proceeding in which the only trial afforded is conducted by a lay judge. In all instances, a defendant in Kentucky facing a criminal sentence is afforded an opportunity to be tried *de novo* in a court presided over by a lawyer-judge since an appeal automatically vacates the conviction in police court. Ky.Rev.Stat. 23.032, Ky. Rule Crim.Proc. 12.06. The trial *de novo* is available after either a trial or a plea of guilty in the police court; a defendant is entitled to bail while awaiting the trial *de novo.*"

96 *S.Ct.* at 2712.

■ In our view, the Delaware system meets the standards established by *North* since it accords every defendant in a Justice of the Peace Court, at the threshold of prosecution, the opportunity to be tried before a lawyer-judge in the Court of Common Pleas. For this reason, we find it unnecessary to reach the question left unanswered in *North*.

## IV

■ As the Supreme Court observed in *North*, a Justice of the Peace Court is a Court of convenience instituted "to provide [a] speedy and inexpensive means" of disposing of minor criminal offenses.[12]  96

---

12. Woolley described the operation of our Justice of the Peace Courts in these words:

"SEC. 87. Jurisdiction. The office of Justice of the Peace is one of the oldest known to the English law. Originally it was merely a peace office, with no civil jurisdiction, but from a time long ante-dating the Constitution of 1776 it was an office of both civil and criminal jurisdiction. Its most important functions are those of conserving the peace and committing for violations of law. The civil jurisdiction of Justices of the Peace was unknown at common law, and therefore depends strictly upon constitutional warrant or statutory enactment. There are no intendments in favor of their jurisdiction.

All courts are of record, which have the power to fine and imprison. Justices of the Peace have this power, therefore the courts of Justices of the Peace are courts of record, and have been so considered since the early judicial history of the State. They are considered courts of inferior jurisdiction, in the general sense, and are comprehended within the class of 'inferior courts' within the meaning of the Constitution, but according to the English distribution of courts into supreme, superior and inferior, the courts of Justices of the Peace were early held in this State to be courts of superior jurisdiction.

SEC. 88. Criminal Jurisdiction. Justices of the Peace may punish by fine, persons guilty of assaults and batteries and other breaches of the peace, under certain circumstances. They may punish by fine, offenders against authorized ordinances of cities and towns.

They may cause the arrest of drunken persons and blasphemers and inflict punishment by fine; and bind to surety of the peace all affrayers, rioters and breakers and disturbers of the peace.

They may commit or bind offenders against the law for their appearance at the proper court, in cases not cognizable before them.

They may issue all writs, warrants and process proper to carry into effect the powers granted to them. All sheriffs, deputy sheriffs, coroners and constables are required duly to serve all legal writs, warrants and process to them directed by any Justice of the Peace." (Footnotes omitted.)

*Woolley, supra,* at 52–53.

*S.Ct.* at 2713 n. 5, citing *Colten v. Kentucky*, 407 U.S. 104, 117, 92 S.Ct. 1953, 1960, 32 L.Ed.2d 584 (1972). For this reason, the original criminal jurisdiction of the Court is narrowly prescribed.[13] It is important to note, nonetheless, that this original criminal jurisdiction is neither exclusive nor mandatory.

■ Under Delaware's judicial system, the Court of Common Pleas has concurrent jurisdiction over all criminal matters triable in a Justice of the Peace Court. The Court of Common Pleas is a State Court and a Court of record, presided over by a Chief Judge and four Associate Judges, 10 *Del.C.* § 1301, *et seq.*, with jurisdiction in both civil and criminal cases. And *any* defendant charged with a crime in a Justice of the Peace Court has the right to trial in Common Pleas. Thus, 11 *Del.C.* § 5303 provides:

"The accused, in all criminal cases where a justice of the peace in the county where the charge is brought has jurisdiction and power to hear and finally determine the matter, may elect at any time prior to day of trial to have the case tried by the [Common Pleas] Court."

Clearly, this statute gives every defendant in a Justice of the Peace Court the unrestricted right to elect to bypass that Court and proceed before the Court of Common Pleas.[14] Indeed, an election by a defendant not to be tried in Common Pleas is a condition precedent to the jurisdiction of a Justice of the Peace Court. Thus, before a Justice of the Peace may proceed with a criminal case he *must* first comply with the

---

**13.** See Art. IV, § 28 which provides that the Justice of the Peace Court may be given jurisdiction over:

"assaults and batteries, carrying concealed a deadly weapon, disturbing meetings held for the purpose of religious worship, nuisances, and such other misdemeanors as the General Assembly may from time to time, with the concurrence of two-thirds of all the Members elected to each House, prescribe."

See also 11 *Del.C.* § 2702, which states:

"The justices of the peace shall have original jurisdiction to hear, try and finally determine the following misdemeanors and any attempt to commit the following misdemeanors:

(1) Section 601 (offensive touching);
(2) Section 602 (menacing);
(3) Section 603 (reckless endangering in the second degree);
(4) Section 611 (assault in the third degree);
(5) Section 804 (reckless burning or exploding);
(6) Section 811 (criminal mischief) only if punishable as a misdemeanor;
(7) Section 820 (trespassing with intent to peer or peep into a window or door of another);
(8) Section 822 (criminal trespass in the second degree);
(9) Section 840 (shoplifting) only if punishable as a misdemeanor;
(10) Section 841 (theft) only if punishable as a misdemeanor;
(11) Section 848 (misapplication of property) only if punishable as a misdemeanor;
(12) Section 851 (receiving stolen property) only if punishable as a misdemeanor;
(13) Section 853 (unauthorized use of a motor vehicle);

(14) Section 861 (forgery) only if punishable as a misdemeanor;
(15) Section 893 (interference with levied-upon property);
(16) Section 900 (issuing a bad check) only if punishable as a misdemeanor;
(17) Section 903 (unlawful use of a credit card) only if punishable as a misdemeanor;
(18) Section 907 (criminal impersonation);
(19) Section 1107 (endangering children);
(20) Section 1241 (refusing to aid a police officer);
(21) Section 1243 (obstructing fire-fighting operations);
(22) Section 1301 (disorderly conduct);
(23) Section 1311 (harassment);
(24) Section 1312 (aggravated harassment);
(25) Section 1313 (malicious obstruction of emergency telephone calls);
(26) Section 1315 (public intoxication);
(27) Section 1322 (criminal nuisance);
(28) Section 1335 (violation of privacy)."

The jurisdiction of the Court is derived entirely from statute, *Johnson v. Hamilton*, Del. Super., 185 A.2d 70 (1962); *State v. Stoesser*, Del.Super., 183 A.2d 824 (1962); but 11 *Del.C.* § 2702 is not the only basis therefor. See also, for example, 21 *Del.C.* § 703 relating to motor vehicle offenses.

**14.** Neither Court has jurisdiction over minors (with limited exceptions) nor as to certain "family" type offenses, all of which are under the exclusive jurisdiction of the Family Court. See 10 *Del.C.* §§ 922, 934.

provisions of 11 *Del.C.* § 5901, which are as follows:

"In all criminal cases in all counties where a justice of the peace has jurisdiction to hear and determine the matter and the accused has the right to elect to have the case tried by the Court of Common Pleas, every justice of the peace, *shall* advise such accused of his right to so elect, before he shall have jurisdiction to try the case." (Emphasis added.)

The Court of Common Pleas differs in many significant respects from the Justice of the Peace Court but, for current purposes, the critical difference is identified in 10 *Del.C.* § 1302(b), which provides:

"The Judges must be citizens of the State and have been actively engaged in the general practice of law in the State for at least 5 years."

■■■■■ In sum, the Delaware system gives every criminal defendant the unfettered right to elect to be tried in the Court of Common Pleas (and not in a Justice of the Peace Court), and the Justice of the Peace must advise each defendant of that right before he has jurisdiction to try the case. Obviously, if a defendant elects to be tried in Common Pleas the Magistrate does not have jurisdiction. In a very real sense, then, the Magistrate has jurisdiction only with a defendant's consent.

### V

The Delaware system differs from that of Kentucky, which was approved by the Supreme Court in *North*, and the difference favors a defendant. Under Kentucky law, a person arrested and brought before a Police Court Judge sitting in a city with a population of less than 20,000 has the initial

determination of guilt or innocence made by a non-lawyer judge.[15] As we have observed, the Court determined that this did not violate the Constitution because a convicted defendant has a right to trial *de novo* before a lawyer-judge. But, under the Kentucky system each defendant in a Police Court must pay the price of a conviction in order to secure a trial in a Court with a lawyer-judge. He may either stand trial and be convicted, or he may waive trial before the non-lawyer judge and receive a trial before a lawyer-judge. But in order to get the benefit of the waiver he must plead guilty. The Court's opinion makes this clear:

"Under the Kentucky system, as we noted in *Colten*, a defendant can have an initial trial before a lawyer-judge by pleading guilty in the police court, thus bypassing that court and seeking the *de novo* trial, 'erasing . . . any consequence that would otherwise follow from tendering the [guilty] plea.' *Colten v. Kentucky*, 407 U.S. at 119, 120, 92 S.Ct. at 1962."

96 *S.Ct.* at 2713.

■■■■ Delaware does not exact such a plea as the price of trial before a lawyer-judge. Here, a defendant need only say that he wants to bypass the Justice of the Peace Court and have his case *initially* presented in a Court presided over by a lawyer-judge.[16] The election is available without any strings attached.

### VI

■■■■ This analysis logically leads to a consideration of waiver of the right to be tried by a lawyer-judge. Waiver of any constitutional right is not deemed to be a routine or casual occurrence in any of our

---

15. Here we should note that defendant relies on *Gordon v. Justice Court for Yuba Judicial District of Sutter County, supra,* wherein the Supreme Court of California held unconstitutional its State system which authorized a non-lawyer judge to preside over the trial of a criminal offense punishable by incarceration. Since the California system did not accord an accused the right to bypass the Justice Court and proceed before a lawyer-judge, as the Delaware system does, the decision is inapposite.

16. Compare *Young v. Konz,* 88 Wash.2d 276, 558 P.2d 791 (1977); 20 Cr.L. 2397 (2/9/77), in which the Supreme Court of Washington found its State statute constitutional, under *North,* although a misdemeanor defendant who pleaded guilty at the first-tier before a lay judge lost his right to trial *de novo* in a Court with a lawyer-judge. Such defendant was deemed to have waived his right to appeal.

Courts, but it certainly is not impossible. Indeed, it is now a well-established principle of constitutional law that a Federal constitutional right may be waived as long as the waiver is both knowing and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).[17]

While definitions of waiver are many, the classic view is that a waiver is an ". . . intentional relinquishment or abandonment of a known right or privilege." *Id.* at 1023. In recent years, the Supreme Court has somewhat simplified the concept, noting that an election to forgo a known right will be binding as long as the elector "knows what he is doing and his choice is made with eyes open." *Adams v. United States, supra*, 63 S.Ct. at 242; *Faretta v. California, supra*; but the State has the burden of showing that such waiver is made knowingly and intelligently, *Miranda, supra*, 86 S.Ct. at 1630.

Applying this standard, we hold: (1) that an accused in a criminal case in a Justice of the Peace Court may waive his right to trial before a lawyer-judge;[18] (2) that such waiver is a condition precedent to jurisdiction of that Court; and (3) that before such waiver is accepted the Judge presiding in that Court must determine that it has been knowingly and intelligently made, and a satisfactory record made of such determination in accordance with the following guidelines:

At the threshold of every criminal prosecution, the presiding Magistrate shall inform the defendant of his rights and advise him as follows:

(1) The nature of the offense charged;

(2) The maximum penalty provided by law for conviction of such offense, including, particularly, any provision as to incarceration;

(3) That the Magistrate is not a lawyer (if such is the case);

(4) That defendant has an absolute right to bypass the Justice of the Peace Court, without prejudice or substantial additional court costs, and be tried at a later date before the Court of Common Pleas, which is located in the Court House at (name the city or town in which the Court sits) and is presided over by a lawyer-judge;

(5) That defendant is not required to have a lawyer in the Court of Common Pleas;

(6) That if defendant elects to be tried in the Court of Common Pleas the Magistrate will fix bail to secure his appearance in that Court.

Such statement of rights and advice shall be given orally by the Magistrate and shall be submitted to defendant in writing for signature. The statement shall be part of the record. It shall contain defendant's acknowledgment that he signed it knowingly and intelligently and that he waives trial in the Court of Common Pleas; it shall also contain the Magistrate's signed certification that he has fully explained defendant's rights, as hereinabove set forth, and that he is satisfied that defendant understood the explanation and knowingly and intelligently signed the statement and waived trial by the Court of Common Pleas. If defendant refuses to sign the statement or if after a review of the totality of the cir-

---

**17.** Federal constitutional rights which may be knowingly and intelligently waived include, *inter alia*, the right to assistance of counsel at trial, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Adams v. United States*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); the right to trial by jury, *Adams, supra*, 63 S.Ct. at 240; the right to remain silent during custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); the right to presence of counsel during custodial interrogation, *Miranda, supra*, and during a post-indictment lineup, *United States v. Wade*, 388 U.S.

218, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967).

**18.** In *Gordon, supra*, the Court conceded:

"Moreover, even in criminal cases where a jail sentence may be imposed, the non-attorney judge may act so long as defendant or his counsel waives the due process right to have the proceedings presided over by an attorney judge. Such right may be voluntarily relinquished just as the right to counsel may be relinquished." 115 Cal.Rptr. at 639, 525 P.2d at 79.

cumstances the Magistrate is not fully satisfied that defendant's waiver has been both knowingly and intelligently made, the case shall be removed to the Court of Common Pleas.

█ We judicially notice that certain Justice of the Peace Courts are open twenty-four hours each day and that a waiver of the kind here discussed may be offered at any time of the day or night. There is neither a stenographic record of the proceedings nor are they recorded verbatim in any other way. The regularity of the proceedings is critical to a defendant who more often than not is without counsel; and it is of great importance, also, to a society concerned with how justice is administered in our "peoples' courts." Generally speaking, in the interest of the administration of justice, it is always desirable to document the proceedings in the most reliable way; but it is essential to do so when an important right of the defendant essential to the jurisdiction of the Court is being waived. For comparison, we point to the meticulous care which the Superior Court must exercise in taking a guilty plea, under guidelines set forth in *Brown v. State*, Del.Supr., 250 A.2d 503, 505 (1969), all of which must be recorded stenographically. No less care must be exercised in a Justice of the Peace Court when taking a waiver of a right essential to the Court's jurisdiction.

█ For these reasons, we hold that, effective January 1, 1978, a waiver of a right to a Common Pleas trial in a criminal case for which a prison sentence is authorized by law may be accepted in a Justice of the Peace Court only if all the proceedings material to that waiver, under the guidelines hereinabove set forth, are also electronically or stenographically recorded. In the absence of such recording, a Justice of the Peace may not accept such waiver.

█ If a prison sentence is imposed by the Magistrate, then a typewritten transcript of the waiver proceedings shall be promptly prepared from the recording and filed with the record of the case. Otherwise, the recording shall be preserved in accordance with the Superior Court practices in such matters.

█ In any case in which a prison sentence is not authorized by law (and until January 1, 1978 for cases in which a prison sentence is so authorized) waiver of trial by the Court of Common Pleas may be accepted without such recording, provided that the statement required under the above guidelines is signed by defendant, certified by the Magistrate as hereinabove required, and made a permanent part of the record of the case.

█ On appeal or *certiorari* proceedings, the absence in the record of such transcript and/or certified statement shall *prima facie* constitute a sufficient showing of lack of jurisdiction in the Justice of the Peace Court to try and determine the case.

## VII

The record in the instant case fails to show a knowing and intelligent waiver by defendant of his right to be tried by a lawyer-judge. The only evidence of waiver of such right appears on the reverse side of the complaint and warrant in the form of a statement imprinted with a rubber stamp as follows:

"PRIOR TO ARRAIGNMENT, DEFENDANT ADVISED OF RIGHTS OF ELECTION, RIGHT TO COUNSEL, AND EFFECT OF PLEA OF GUILTY"

Defendant's signature is not affixed to the legend nor inscribed anywhere on the complaint and warrant.

█ This is not an adequate showing by the State of a knowing and intelligent waiver, *Johnson v. Zerbst, supra*, and of course, waiver will not be presumed from a silent record. *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Hales v. State*, Del.Supr., 344 A.2d 229, 231 (1975). To support an effective waiver, the record must show that the accused was instructed as to his right of election and that he "intelligently and understandingly" decided to forgo that right. As this Court stated in *Nelte v. State*, Del.Supr., 198 A.2d 921, 923 (1964):

"[T]he transcript of the record in order to maintain the jurisdiction of the sentencing Justice of the Peace must *affirmatively show that the defendant was acquainted with a right to elect which court he would be* tried in." (Emphasis added.)

We conclude that the State has failed in this case to make the requisite affirmative showing of a knowing and intelligent waiver of the right to trial in the Court of Common Pleas.

\*   \*   \*

In view of our conclusion, it is not necessary to discuss other arguments of the parties.

Reversed and remanded with instructions to the Superior Court to reverse defendant's conviction by the Justice of the Peace.[19]

**19.** This ruling shall apply only to this case, to *State v. Casto and Daudt,* Del.Supr., 375 A.2d 444 (1977), decided today, and to any other case now on appeal or in which the trial begins after the date of this opinion. Compare *Keys v. State,* Del.Supr., 337 A.2d 18, 20 (1975).